[No. 30730-4-I.   Division One.   January 10, 1994.]

MARGARET SAVAGE, *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.*

---

484

*Christine O. Gregoire, Attorney General, Jon P. Ferguson, Senior Counsel,* and *Linda M. Gallagher, Assistant,* for appellant.

*Janet L. Rice* and *Schroeter, Goldmark & Bender, P.S.,* for respondent.

AGID, J. — The State of Washington appeals the trial court's denial of its motion for judgment notwithstanding the verdict or for a new trial in a negligent parole supervision action. The State argues that the trial court erred in failing to instruct the jury both that it is entitled to the qualified immunity granted to its parole officers in *Taggart v. State,* 118 Wn.2d 195, 822 P.2d 243 (1992), and to consider the State's resources in determining whether the State had discharged its duty of reasonable care. In the event the case is remanded, Savage cross-appeals an evidentiary ruling excluding a memorandum offered in her case.

We conclude that, to the extent that Savage's claim is based on the alleged negligent acts of individual parole officers, Supreme Court precedent requires us to hold that a parole officer's qualified immunity extends to the State in a negligent parole supervision case. Because the jury was not instructed on the State's derivative immunity, we reverse and remand for a new trial. We further conclude that, although the State may properly argue its limited resources to the jury, the trial court was not required to give an instruction to that effect. Finally, we grant Savage's cross appeal and hold that the memorandum in question should have been admitted.

## I
### FACTS

Martin Schandel raped Margaret Savage on July 26, 1985. Schandel had been on parole for 3 months when he committed the crime.[1] Schandel was arrested on August 2, 1985, and subsequently charged and convicted of second degree rape. Savage brought suit against the State Department of Corrections (Department) claiming that it was negligent in supervising Schandel while he was on parole. Savage did not sue the individual parole officers assigned to supervise Schandel's case.

Tandra Schwamberg was Schandel's parole officer from April 26, 1985, the date he was paroled, until July 9, 1985. William Allen assumed supervision of Schandel on July 10, 1985, and was the officer assigned to Schandel's case when he raped Savage. Allen was originally scheduled to be Schandel's parole officer, but he took a leave of absence before Schandel was released and his case load was turned over to Schwamberg.

While Schandel was on parole, he was subject to the conditions imposed by the Parole Board in its order of parole and conditions. Under the order, he was required to report regularly to his parole officer, not consume alcohol or drugs, and enter and complete both alcohol and mental health counseling "as soon as possible upon release". Schandel enrolled in alcohol counseling, but he received no mental health counseling during the 3 months he was on parole.[2] His parole officers did not require Schandel to take any drug or urinalysis tests while he was on parole, although he had a history of alcohol and drug abuse. Savage introduced testimony that

---

[1] Schandel was paroled on April 26, 1985. The underlying conviction was second degree assault while armed with a deadly weapon. Schandel also has prior convictions for rape and carnal knowledge.

[2] The parties dispute whether Schandel was ever referred for mental health counseling. Savage claims he was never referred. The State notes that, because the documents concerning Schandel's parole were not retained, there is no evidence establishing that Schandel had not been referred. It is uncontroverted, however, that he did not receive mental health counseling while he was on parole.

Schandel was drinking and using drugs while on parole and asserted that the parole officers should have discovered and reported these violations of the Parole Board's order.

Schwamberg testified that she followed her normal practices in supervising Schandel and that these practices were in compliance with regulatory guidelines and supervisors' directives in force at the time. In her opinion, the requirement that Schandel enter mental health counseling "as soon as possible" had not been violated by his failure to receive treatment in the 3 months following his release date. She also stated that, under Department directives in force at the time, a parole officer's use of breath or urine tests to monitor a parolee's drug and alcohol use was a matter of officer discretion. Allen testified that he did not recall Schandel.

To support her theory that the State was negligent in its supervision of the parole officers, Savage introduced evidence of the heavy case load assigned to individual parole officers. Allen testified that he had been criticized in performance evaluations for being slow to file violation reports. Savage also elicited testimony that, although the Department authorized the use of urinalysis tests in some circumstances, the Bellevue office had not yet received funding to implement a testing program.

The jury returned a verdict against the State, finding Savage 20 percent contributorily negligent. The State moved for judgment notwithstanding the verdict or alternatively for a new trial. The motion was denied. This appeal followed.

## II
### QUALIFIED IMMUNITY

Parole officers are entitled to qualified immunity for allegedly negligent parole supervision if their actions are in furtherance of a statutory duty and in substantial compliance with the directives of superiors and relevant regulatory guidelines. *Taggart v. State*, 118 Wn.2d 195, 216, 822 P.2d 243 (1992). The State argues that this qualified immunity extends to it as their employer when liability is predicated on a respondeat superior theory. Savage contends that the

trial court did not err in refusing to instruct the jury on qualified immunity because the liability and immunity of the individual officers, who were not parties to the suit, were not at issue. Savage further argues that there is no case holding that immunity granted to the officers extends to the State. The trial court ruled that the immunity of the officers was not part of the case and that the issue of their individual negligence was irrelevant to the ultimate issue of the State's own liability, thus implicitly rejecting the argument that the officers' immunity extended to the State. Accordingly, the trial court refused to instruct the jury on any aspect of qualified immunity.

No Washington case squarely addresses the issue of whether the qualified immunity of a parole officer extends to the State. Courts in this state, however, have extended the immunity of other types of government employees to the governmental body employing them in a number of cases. *See Lutheran Day Care v. Snohomish Cy.*, 119 Wn.2d 91, 829 P.2d 746 (1992) (local governmental entities enjoy the quasi-judicial immunity of their agents for purposes of respondeat superior liability), *cert. denied*, ___ U.S. ___, 122 L. Ed. 2d 353, 113 S. Ct. 1044 (1993); *Frost v. Walla Walla*, 106 Wn.2d 669, 724 P.2d 1017 (1986) (police officer immunity under the Uniform Controlled Substances Act extends to the jurisdictions that employ them); *Guffey v. State*, 103 Wn.2d 144, 690 P.2d 1163 (1984) (qualified immunity of police officers extends to the State where the basis for liability is respondeat superior); *Creelman v. Svenning*, 67 Wn.2d 882, 410 P.2d 606 (1966) (quasi-judicial immunity of prosecutor extends to State and County); *Plotkin v. State*, 64 Wn. App. 373, 826 P.2d 221 (Parole Board's absolute quasi-judicial immunity for release decisions extends to the State), *review denied*, 119 Wn.2d 1022 (1992);[3] *Spurrell v. Bloch*, 40 Wn. App. 854, 701

---

[3]*See also Taggart v. State, supra* (relied on in *Plotkin* on the basis that, although the Supreme Court did not expressly hold that the Parole Board's absolute quasi-judicial immunity for release decisions extends to the State, it necessarily concluded that it did because it affirmed the dismissal of Taggart's negligent release claim against the State).

P.2d 529 (governmental employer not liable for actions of employee in violation of 42 U.S.C. § 1983 where the only theory of liability asserted is respondeat superior), *review denied*, 104 Wn.2d 1014 (1985). *But see Babcock v. State*, 116 Wn.2d 596, 809 P.2d 143 (1991) (discussed below, declining to extend immunity of caseworkers to the Department of Social and Health Services). With the exception of *Babcock*, the case law in Washington uniformly supports the State's position that, where the basis for liability is respondeat superior, the immunity of a government employee extends to the government employer.[4]

*Babcock* is the leading case in which the immunity of a state employee was not extended to the State. *Babcock v. State, supra.* There the Supreme Court considered the immunity of individual social workers and of the State for negligent foster care investigation and placement. The Legislature had granted qualified immunity to caseworkers who took children into 72-hour protective custody under RCW 26.44.056. At issue in *Babcock* was whether that qualified immunity should be extended to all caseworkers beyond the situations delineated in RCW 26.44.056.

The court in *Babcock* extended qualified immunity to all caseworkers, but it specifically declined to extend their immunity to the State. 116 Wn.2d at 620. The court reasoned that "in granting caseworkers a qualified immunity . . . the Legislature made it clear that it did not intend to supersede or abridge the remedies provided in RCW 4.92."[5] 116 Wn.2d

---

[4]This discussion pertains only to the State's liability for negligence based on a respondeat theory of liability. The State is clearly liable for its own independent negligent acts, if any. *See Babcock*, 116 Wn.2d at 621 ("[p]ersonal immunities granted employees cannot reach the separate actions of their employer because a judgment in favor of one tortfeasor does not terminate claims against a separate tortfeasor" (citing Restatement (Second) of Judgments § 49 (1982))).

[5]RCW 26.44.060(3) provides: "Nothing in this chapter shall be construed as to supersede or abridge remedies provided in chapter 4.92 RCW." RCW 4.92.090 abrogated the sovereign immunity of the State. That statute reads:

"The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."

at 620. The court justified granting common law immunity to all caseworkers on the basis that such a grant was reasonably consistent with legislative policy. However, the court held it could not "extend that immunity to state agencies in the face of a statutory provision admonishing us not to construe an emergency immunity to abrogate sovereign immunity." 116 Wn.2d at 620. *Accord Dunning v. Paccerelli*, 63 Wn. App. 232, 818 P.2d 34 (1991), *review denied*, 118 Wn.2d 1024 (1992).

The reasoning in *Babcock* suggests that the usual principles of agency liability apply in suits against the State absent a legislative mandate to the contrary. This view is consistent with the Legislature's abrogation of sovereign immunity under RCW 4.92.090 in that it makes the State "liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." Thus, where the Legislature has not spoken, our courts have held that the State, like any other employer, is entitled to claim the protection of an employee's immunity where its liability is based on a respondeat superior theory.[6]

Both *Babcock* and the other cases addressing the issue make it clear that public policy is the most important consideration in determining whether common law immunity should be granted to government employees and whether, once granted, it should be extended to the government employer.[7] There are two views on the question of whether the

---

[6]Although the majority opinion in *Babcock* states that "[l]egislative policy requires us to hold that DSHS cannot claim the qualified immunity of its caseworkers as does the majority of precedent on the subject", the cases cited by the majority for this proposition are from other jurisdictions. 116 Wn.2d at 619. Justice Andersen's dissent disputes this characterization of the law in Washington and argues that *Guffey, Spurrell* and *Frost* clearly establish that, where an employee has immunity, the State cannot be held liable on a respondeat superior theory. 116 Wn.2d at 620.

[7]*See, e.g., Babcock*, 116 Wn.2d at 621 ("we have acknowledged that policy considerations control the question of whether a government agency can take advantage of its agent's immunity" (citing *Creelman*, 67 Wn.2d at 885)); *Lutheran Day Care*, 119 Wn.2d at 127 (" 'public policy . . . requires immunity for both the state and the county for acts of judicial and quasi-judicial officers" (quoting *Creelman*, 67 Wn.2d at 885)).

State should be entitled to the immunity of its employee. Both proceed from the same major premise: that governmental workers should receive immunity to ensure that they are afforded sufficient freedom from the threat of civil liability to carry out their duties. One view, however, is that, as a matter of public policy, immunity should not extend to the State because to do so leaves plaintiffs completely without a remedy when they are injured by the negligence of a state worker. *See, e.g., Babcock*, 116 Wn.2d at 622 (majority opinion). The second view is that extending immunity to the State is wise public policy because state workers should not be hampered in carrying out their duties by the fear that their actions will incur liability for their employers. *See, e.g., Babcock*, 116 Wn.2d at 638 (Andersen, J., concurring in part, dissenting in part).

Whatever our opinion of the merits of these policy considerations, we are not free to decide this issue in the first instance. As the discussion above indicates, the Supreme Court has extended the immunity of government workers to their employer in every instance except *Babcock*, the only case in which a majority of the court determined that the Legislature prohibited such an extension. We therefore hold that the State is entitled to qualified immunity to the extent the plaintiff relies on the actions of parole officers to establish the State's liability for negligence under a respondeat superior theory.

The jury in this case was specifically instructed to hold the State liable for the actions of the officers under a respondeat superior theory of liability. The jury was also instructed to consider evidence of both the State's supervision of the officers and the officers' supervision of Schandel in establishing the State's liability. Thus, the jury never considered the separate threshold issue of whether the acts or omissions of the officers were themselves entitled to qualified immunity. We must therefore determine whether the trial court's refusal to instruct the jury that the State was entitled to the benefit of its parole officers' qualified immunity and the standard by

which the officers' entitlement to immunity was to be determined is reversible error.

■ The refusal to give a requested instruction is reviewed for abuse of discretion. *Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 828 P.2d 597, *review denied*, 119 Wn.2d 1020 (1992). However, an erroneous refusal to give a requested instruction is grounds for reversal if, as a result of the missing instruction, a party cannot argue its theory of the case or the instructions, when read as a whole, do not inform the jury of the applicable law. *Crossen v. Skagit Cy.*, 100 Wn.2d 355, 360, 669 P.2d 1244 (1983). Because the State was entitled to an instruction informing the jury that it could only be held liable for the actions of the parole officers if those actions were not protected by the officers' qualified immunity, reversal is required. The failure to so instruct both precluded the State from arguing its immunity defense and misinformed the jury of the applicable law. Neither this court nor the trial court can determine whether the jury's verdict was based on the alleged negligence of the parole officers in whole or in part, and the jury was never given the opportunity to determine whether the officers' actions were within the ambit of the immunity granted in *Taggart*.

■ The trial court committed prejudicial error in refusing this instruction. An error is prejudicial if it affects or presumptively affects the outcome of a trial. *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983). Given the court's respondeat superior instruction, it is very likely that the jury based its verdict at least in part on the allegedly negligent acts of the officers and held the State liable for those actions without considering whether those actions were entitled to the qualified immunity granted in *Taggart*.[8]

---

[8]This error could be considered harmless only if this court could determine from the record that, as a matter of law, there was insufficient evidence to establish that the officers' actions fell outside their immunity and that those actions were negligent, so that the jury necessarily must have based its verdict entirely on the State's own negligence. As the discussion below indicates, Savage introduced sufficient evidence from which the jury could have concluded that the officers were independently negligent. Therefore, we cannot conclude that the error was harmless.

## III
### JUDGMENT NOTWITHSTANDING THE VERDICT

The State argues that Savage's only theory at trial was that the State was liable for the officers' acts or omissions based on a respondeat superior theory of liability. Because it asserts that there was insufficient evidence to find either that the officers' actions were not entitled to immunity or that the State was independently liable for a separate act or omission, the State contends that it was entitled to judgment notwithstanding the verdict (JNOV), there being no basis upon which the jury could have held it liable.

■ We disagree with the State's position that it was entitled to JNOV. A JNOV is appropriate when the court finds, after viewing the evidence in the light most favorable to the nonmoving party, "as a matter of law, . . . there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party." *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520, 7 A.L.R.5th 1014 (1990). As the facts outlined in part one of this opinion demonstrate, Savage clearly presented sufficient evidence of the State's alleged negligence independent of that of the parole officers to sustain a verdict against the State. The court properly denied the State's motion.

## IV
### FINANCIAL RESOURCES INSTRUCTION

We next decide whether the trial court erred in refusing to instruct the jury that it could consider the State's financial resources in determining the reasonableness of its actions. The State's proposed instruction reads:

> In determining whether the defendant's acts or failure to act were reasonable you may take into account the defendant's available resources and its resource allocation policy.

The State offered this instruction based on *Bailey v. Forks*, 108 Wn.2d 262, 271, 737 P.2d 1257, 753 P.2d 523 (1987). There the Supreme Court considered the applicability of the public duty doctrine in a suit against a municipality alleging negligence for an officer's failure to arrest a drunk driver

who injured another motorist. In dicta the court stated "[i]n determining whether a municipality's act or failure to act was unreasonable, the trier of fact can take into account the municipality's available resources and its resource allocation policy." 108 Wn.2d at 271.

This statement was questioned and distinguished in *McCluskey v. Handorff-Sherman*, 68 Wn. App. 96, 841 P.2d 1300 (1992), *review granted*, 121 Wn.2d 1021 (1993). *McCluskey* involved a wrongful death action against an automobile driver and the State. The plaintiff contended that the State was negligent in failing to make certain improvements on a particular stretch of road. The State wanted to argue that it could not be held liable for this failure because the Legislature, which controlled the funds for road projects, had not authorized funding for the improvement of this section of road. 68 Wn. App. at 101.

The *McCluskey* court did not adopt the *Bailey* dicta because it found the situation before it distinguishable. First, it noted that *Bailey* involved the government's duty to protect citizens from the conduct of third parties, whereas in *McCluskey* the State's own actions were at issue. The court also observed that, where the State's negligence is based on the actions of third parties, there may be "unique policy reasons for limiting liability" because the government's inability to predict the threat to public safety posed by third parties may hamper its ability to adequately allocate its resources. 68 Wn. App. at 108. Second, it noted that *Bailey* involved the liability of a municipality and not of the State. A municipality, the court stated, is dependent on state law to generate revenue. The State, on the other hand, is itself responsible for the allocation of state funds. The court held that the "State cannot avoid responsibility for its fiscal decisions by stating that those decisions have assumed the status of law and thus are unassailable." 68 Wn. App. at 109.

While we agree generally with the distinctions drawn in *McCluskey*, neither it nor *Bailey* is entirely on point. We can best resolve this issue by reference to RCW 4.92.090.

That statute, discussed above, provides that the State "shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." While the availability of funding may be relevant to the reasonableness of the officers' actions, there is no authority for the State's argument that it was entitled to a specific instruction on this issue. RCW 4.92.090 mandates that the State is to be treated in the same manner as a private person or corporation. No authority is cited supporting the proposition that a private person or a corporation would be entitled to have the jury instructed that it could consider their particular financial circumstances in evaluating the reasonableness of their conduct. The trial court did not abuse its discretion in refusing to instruct the jury that it could consider the State's resources in judging the reasonableness of the State's conduct.[9]

## V

### ADMISSIBILITY OF MUSSELWHITE MEMORANDUM

In the event of a remand, Savage has cross-appealed from the trial court's exclusion of a memorandum from Pete L. Musselwhite, Allen's supervisor, to Ross Peterson, Director of the Division of Community Services, asking that Allen's case load be double filled while Allen was on leave and explaining that the resources to do so were currently available.

The trial court excluded this evidence on the grounds that it was inadmissible hearsay, cumulative, and implicated the

---

[9]The State argues for the first time on appeal that allowing a plaintiff to challenge the adequacy of the Legislature's funding for the Department of Corrections also violates the separation of powers doctrine. Apparently, the State is arguing that a negligence suit by a private party challenging the State's supervision of employees (and implicitly, its resource allocation decisions) is tantamount to a judicial interference with legislative prerogative. We do not address this argument because it is without merit in the context of proposed jury instructions in a negligence case. In addition, an argument raised for the first time on appeal cannot be reviewed absent unusual circumstances. RAP 2.5(a); *Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 481, 843 P.2d 1056 (1993). No special circumstances compelling review of this argument have been brought to our attention.

privacy of the parole officer. Savage contends this document is not hearsay and should have been admitted as an admission under ER 801(d)(2). The State contends the document was properly excluded under ER 403 as it has no relevance to the level of Schandel's supervision. Alternatively, the State argues that, even if relevant, the memorandum is unduly prejudicial because it would have allowed the jury to speculate regarding Allen's mental state on returning from his leave of absence.[10]

██ ██ The admission or exclusion of evidence is reviewed for abuse of discretion. *Egede-Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 606 P.2d 1214 (1980). A trial court abuses its discretion only where the discretion is exercised on untenable grounds or for untenable reasons. *Hizey v. Carpenter*, 119 Wn.2d 251, 830 P.2d 646 (1992). We conclude that the trial court abused its discretion by excluding this document. We agree with Savage that the document is relevant to the State's negligence and, as an admission of a speaking agent for the State, is not hearsay. ER 801(d)(2); *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 261-63, 744 P.2d 605 (1987). It is also not cumulative because, while there was some testimony on the subject, the jury could find the written document far more persuasive than the less-than-perfect recollections of state employees at trial.

Under ER 801(d)(2), a statement is an admission by a party-opponent and, therefore, not hearsay if:

> [t]he statement is offered against a party and is . . . (iii) a statement by a person authorized by the party to make a statement concerning the subject, or (iv) a statement by the party's agent or servant acting within the scope of the authority to make the statement for the party . . ..

There is no direct proof in the record that the Department specifically authorized Musselwhite to request additional

---

[10]The memorandum contains statements about the reasons for Allen's medical leave of absence. The concern for Allen's privacy, however, does not affect the document's admissibility because Savage was willing to offer a redacted version

assistance for the Bellevue Community Corrections office. Therefore, we must look to the "overall nature of his authority to act for the party" to determine whether his statement falls within the ambit of ER 801(d)(2). *Lockwood*, 109 Wn.2d at 262. In light of Musselwhite's position as a community corrections regional administrator, it is entirely reasonable to infer that his duties encompassed staffing the offices within his region and that he had authority to request additional personnel for any office he thought was understaffed. Similarly, the memorandum clearly implies that the Bellevue office was understaffed and that Allen's position in particular could not be handled by one parole officer. Thus, we conclude that the redacted version of the Musselwhite memorandum was not hearsay and should not have been excluded on that basis.

▄ The trial court also excluded the memorandum on the basis that it was cumulative of other evidence in the case. In its oral ruling the court stated that "we do have in the record now what appears to me as rather abundant information about work overload on the part of . . . Allen and also . . . Schwamberg such that it might be cumulative at this point and even unnecessary." However, the record establishes that, while there was general testimony about the parole officers' heavy case loads, there was nothing in the record establishing that agency officials in a position to order or request additional staffing were aware of the heavy case loads or recognized understaffing as a problem. As we noted above, the written memorandum from a speaking agent of the State acknowledging the very problem Savage was relying on to establish the State's independent liability is much more persuasive evidence of her position than was the oral testimony. As such, it was not cumulative and the trial court should have admitted it.

We affirm the trial court's refusal to give the State's proposed financial resources instruction. We reverse its ruling

---

of the document omitting all references to the reasons for Allen's leave in order to have the document admitted.

on the immunity instruction and on the Musselwhite memorandum. The issue of damages has not been raised on appeal. Therefore, we remand the case for a new trial on the issues of liability only.

GROSSE and BAKER, JJ., concur.

After modification, further reconsideration denied March 8, 1994.

Review granted at 124 Wn.2d 1017 (1994).