[No. 61686-8.    En Banc.    August 17, 1995.]

MARGARET SAVAGE, *Petitioner*, v. THE STATE OF WASHINGTON, *Respondent*.

*Schroeter, Goldmark & Bender* by *Mark Leemon* and *Janet L. Rice*, for petitioner.

*Christine O. Gregoire, Attorney General*, and *Jon P. Ferguson* and *Michael P. Lynch, Assistants*, for respondent.

*Stewart A. Estes* on behalf of Washington Defense Trial Lawyers, amicus curiae.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae.

UTTER, J.* — This court granted review of a Court of Appeals decision reversing a trial court ruling barring the State from asserting the qualified immunity of its parole officer in a suit alleging negligent supervision of a parolee. The State cross-petitions the Court of Appeals' conclusion the State was not entitled to instruct the jury that it could consider the State's financial resources in deciding the reasonableness of the State's actions.

We reverse the Court of Appeals' holding that the qualified personal immunity of parole officers extends to the State; we affirm its conclusion that the trial court did not err in refusing to instruct the jury on the State's available resources and its resource allocation policy.

The issues arise from the State's allegedly negligent parole supervision of Marvin Schandel, a felon with a history of sexual assaults and violence. Schandel had been in and out of prison since 1967, having been convicted on separate occasions of carnal knowledge; raping and assaulting a 13-year-old; and of assaulting 11- and 12-year-old girls. Plaintiff's Ex. 2. He also had a conviction for assault with a deadly weapon. Plaintiff's Ex. 12.

Schandel returned to prison several times for parole violations. Clerk's Papers at 229; Plaintiff's Ex. 9. In 1985, he was again paroled under conditions that he not consume liquor or illegal drugs, and that he enter and

---

*Judge Robert F. Utter is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend. 38).

complete mental health counseling as soon as possible upon release. Plaintiff's Exs. 15, 16. He was scheduled to be released to the supervision of parole officer William Allen. Report of Proceedings (Feb. 13, 1992) at 88. Before Schandel could be released, Allen took a leave of absence and his caseload was turned over to parole officer Tawndra Schwamberg. Allen returned to supervise Schandel shortly before he raped Savage.[1] Parole officers Schwamberg and Allen testified that during the time they were responsible for supervising Schandel, their case load was very heavy; each was responsible for monitoring over 100 parolees. Report of Proceedings, vol. II (Feb. 13, 1992) at 97.

Savage sued the State of Washington for improper supervision of Martin Schandel. Neither of the two parole officers involved in the supervision of Schandel was sued individually.

The case was tried to a jury and resulted in a verdict in the Plaintiff's favor. Prior to trial, the State moved for summary judgment based on its asserted immunity from suit, which was denied. Clerk's Papers at 337. At trial, the court granted Plaintiff's motion in limine, precluding the State from presenting evidence or arguing that it shared the qualified immunity of its parole officers. Report of Proceedings (Feb. 11, 1992) at 34-36. The trial court refused the State's proposed jury instruction regarding the State's funding limitations. Clerk's Papers at 641. A verdict in Plaintiff's favor was entered on April 8, 1992.

The Court of Appeals reversed on the ground the qualified personal immunity of the parole officers shielded the State from liability. Petitioner seeks review of that decision. The Court of Appeals also decided that "[w]hile the availability of funding may be relevant to the reasonableness of the officers' actions," the State was not entitled to a jury instruction on this issue. *Savage v. State*, 72 Wn. App. 483, 495, 864 P.2d 1009 (1994). The appellate court

---

[1]Judgment and Sentence (rape in the second degree); Plaintiff's Ex. 21.

refused to consider the State's constitutional argument because it was not raised below. *Savage*, 72 Wn. App. at 495. Respondent cross-petitions from the Court of Appeals' holding that the trial court did not err in refusing to provide the jury an instruction that it could consider the funding limitations of the State.

# I

## QUALIFIED PERSONAL IMMUNITY

In *Taggart v. State*, 118 Wn.2d 195, 822 P.2d 243 (1992), we held that parole officers have qualified immunity for allegedly negligent supervision of parolees who harm third parties. An officer is entitled to such immunity if his or her actions are in furtherance of a statutory duty, are in substantial compliance with the directives of superiors, and respect relevant regulatory guidelines. *Taggart*, 118 Wn.2d at 216. That case did not address the question presented here, whether that personal qualified immunity may be asserted by the State when suit is brought against it for negligence under a respondeat superior theory of liability.[2]

## A

### The Court of Appeals' Opinion

The Court of Appeals, considering this issue, held that the qualified personal immunity granted to parole officers in *Taggart* extended to the State, making it immune from suit brought under a respondeat superior theory of liability. Petitioner maintains the Court of Appeals' decision conflicts with basic principles of agency law as interpreted by this court, ignores the policy analysis this court has established in recent cases to govern whether the immunity of a state agent extends to the State, and

---

[2]The State was sued under a respondeat superior theory and for its own negligence. That the State may be sued for its own independent acts of negligence is not here challenged, nor is it in question. *See* RCW 4.92.090; *Babcock v. State*, 116 Wn.2d 596, 621, 809 P.2d 143 (1991). The jury verdict in this case does not indicate to what extent the State was found liable for its own acts.

contravenes the clear legislative mandate abrogating sovereign immunity.

1. Agency Law

■■ The Court of Appeals based its holding in part on its misapprehension that under agency law, "the State, like any other employer, is entitled to claim the protection of an employee's immunity where its liability is based on a respondeat superior theory." *Savage*, 72 Wn. App. at 490. We adhere to the contrary view, as we recently explained in *Babcock v. State*, 116 Wn.2d 596, 620, 809 P.2d 143 (1991):[3]

> An agent's immunity from civil liability generally does *not* establish a defense for the principal. Restatement (Second) of Agency § 217 (1958). Accordingly, the immunities of governmental officials do *not* shield the governments which employ them from tort liability, *even when liability is predicated upon respondeat superior.*

(Citation omitted. Italics ours.) The Restatement section upon which *Babcock* relies sets forth the general rule as follows:

§ 217. Where Principal or Agent has Immunity or Privilege

In an action against a principal based on the conduct of a servant in the course of employment:

(a) The principal has a defense if:

(i) he had an immunity from liability to the person harmed, or

(ii) he had a delegable privilege so to act, or

(iii) the agent had a privilege which he properly exercised on his principal's behalf, or

(iv) the agent did not fall below the duty of care owed by the principal to the third person.

(b) *The principal has no defense because of the fact that:*

---

[3]Impliedly overruling a contrary statement in *Guffey v. State*, 103 Wn.2d 144, 690 P.2d 1163 (1984).

(i) he had a non-delegable privilege to do the act, or

(ii) *the agent had an immunity from civil liability as to the act.*

(Italics ours.) RESTATEMENT (SECOND) OF AGENCY § 217 (1958). The commentary explains:

> *Immunities*, unlike privileges, *are not delegable and are available as a defense only to persons who have them.* . . . On the other hand, where the principal directs an agent to act, or the agent acts in the scope of employment, *the fact that the agent has an immunity from liability does not bar a civil action against the principal.* Thus, where a servant in the scope of employment negligently runs over his wife, an action against the master by the injured wife is not barred. This result is in accordance with the rule stated in this Section and is the rule adopted in most of the states.

(Italics ours.) RESTATEMENT (SECOND) OF AGENCY § 217 cmt. b (1958). *See also* RESTATEMENT (SECOND) OF TORTS § 895D cmt. j (1979) (explaining that the immunity of a public officer is not necessarily coterminous with that of the government).

### 2. Precedent

The Court of Appeals also relied for its holding on a series of cases in which the immunity of government employees was extended to the government. *Savage v. State*, 72 Wn. App. 483, 488-89, 491, 864 P.2d 1009, *review granted*, 124 Wn.2d 1017 (1994) (citing *Creelman v. Svenning*, 67 Wn.2d 882, 410 P.2d 606 (1966)); *Plotkin v. Department of Corrections*, 64 Wn. App. 373, 826 P.2d 221, *review denied*, 119 Wn.2d 1022 (1992); *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 829 P.2d 746 (1992), *cert. denied*, 113 S. Ct. 1044 (1993); *Frost v. City of Walla Walla*, 106 Wn.2d 669, 724 P.2d 1017 (1986); *Guffey v. State*, 103 Wn.2d 144, 690 P.2d 1163 (1984).

The appellate court's analysis in this case resembles that recently rejected by this court in *Lutheran*. There, we admonished against conclusory holdings which rely on ostensibly controlling cases while eschewing the "detailed policy-oriented factual inquiry which . . . is necessary to

decide the immunity question." *Lutheran*, 119 Wn.2d at 100.

Two of the cases upon which the Court of Appeals relied are inapposite because they concern quasi-judicial immunity, not the personal qualified immunity at issue here. *See Creelman v. Svenning*, 67 Wn.2d 882 (County and State are immune from liability for malicious prosecution) and *Plotkin v. Department of Corrections*, 64 Wn. App. 373 (parole board's quasi-judicial immunity for release decisions extends to the State).

■ Quasi-judicial immunity and personal qualified immunity are designed to serve different functions. The former "attaches to persons or entities who perform functions that are so comparable to those performed by judges that it is felt they should share the judge's absolute immunity while carrying out those functions." *Lutheran*, 119 Wn.2d at 99.

Quasi-judicial immunity is designed to protect the government, not the individual employee, from suit.

> The doctrine of exemption of judicial and quasi-judicial officers (the prosecuting attorney comes within the second classification) is founded upon a sound public policy, *not for the protection of the officers*, but for the protection of the public, and to insure active and independent action of the officers charged with the prosecution of crime, for the protection of life and property.

*Anderson v. Manley*, 181 Wash. 327, 331, 43 P.2d 39 (1935); *see also Taggart v. State*, 118 Wn.2d 195, 203, 822 P.2d 243 (1992) (the purpose of judicial immunity is not to protect judges as individuals but to safeguard the independence of the judiciary) (citing *Adkins v. Clark County*, 105 Wn.2d 675, 677, 717 P.2d 275 (1986)).

By contrast, personal qualified immunity, such as is granted to parole officers and caseworkers, is intended to protect the individual from the unduly inhibiting effect the fear of personal liability would have on the perfor-

mance of his or her professional obligations. *See Babcock v. State*, 116 Wn.2d 596, 616-19, 809 P.2d 143 (1991); *Taggart*, 118 Wn.2d at 216.

It follows from the distinct purposes the two immunities serve that the extension of quasi-judicial immunity from the agent to the State does not compel such an extension where qualified personal immunity is at issue.

The Court of Appeals' reliance on *Lutheran* is misplaced for precisely this reason. There, we admonished against even the extension of quasi-judicial immunity from one context to another without an analysis of the policies implicated in each context. If it is improper to extend quasi-judicial immunity in this manner, it follows with even greater force that two different types of immunity should not be treated as identical without regard to the circumstances in which they operate.

Two of the other cases upon which the Court of Appeals relied, *Frost v. City of Walla Walla*, 106 Wn.2d 669 and *Guffey v. State*, 103 Wn.2d 144, are not sound authority for the extension of qualified immunity from the agent to the State because they arrive at their holdings in a manner which fails to engage the policy analysis the *Lutheran* court requires for deciding the question properly.

Thus, in *Frost* the court extended the immunity of police officers to their employing jurisdiction. That decision imported the policy underlying *quasi-judicial* immunity to the interpretation of a statute granting only a qualified immunity to certain law enforcement officers for actions which are neither judicial nor quasi-judicial, the seizing and impounding of vehicles under the statute. *See Frost*, 106 Wn.2d at 673.[4]

Similarly, in *Guffey* this court held that the qualified

---

[4]The tendency to confuse various forms of immunity is manifest also in the context of discretionary immunity. *See Taggart*, 118 Wn.2d at 209 n.3 (citing Marie Aglion, Comment, *Washington's Discretionary Immunity Doctrine and Negligent Early Release Decisions: Parole and Work Release*, 65 WASH. L. REV. 619 (1990) (critically discussing *Noonan v. State*, 53 Wn. App. 558, 769 P.2d 313, *review denied*, 112 Wn.2d 1027 (1989)); David P. Marcus, Comment, *Governmental*

immunity of police officers extends to the State when based on respondeat superior. *Guffey* is not controlling for several reasons. First, it is based on a misapprehension about a general agency principle which was overruled by a more recent case.[5] *Babcock*, 116 Wn.2d at 620. Second, *Guffey* relied on an inapposite case, *Nyman v. MacRae Bros. Constr. Co.*, 69 Wn.2d 285, 287, 418 P.2d 253 (1966), for its holding the State enjoys the same immunity as a police officer. *Nyman* involved private parties, not government entities. The opinion moreover, relies on RESTATEMENT OF TORTS § 883 cmt. b, illus. 4 (1939) and RESTATEMENT (SECOND) OF AGENCY § 217B(2) (1958), which do not support the result it reaches. *Guffey*, 103 Wn.2d at 153. Finally, *Guffey* does not address, let alone discuss, how its holding can be reconciled with the abolition of sovereign immunity in RCW 4.92.090.

The Court of Appeals recognized that *Babcock v. State*, 116 Wn.2d 596, supports a different result from the one it reached on the question of whether the State may assert the qualified immunity of its officers. The court declined to follow *Babcock*, however, because the cases just cited reached a different result, and because *Babcock* relied on case law from other jurisdictions. *See Savage v. State*, 72 Wn. App. at 490 n.6.

We cannot agree with the court's basis for distinguishing *Babcock* from this case. *Babcock* granted Department of Social and Health Services (DSHS) caseworkers qualified immunity but declined to extend this immunity to the State on the ground to do so would "deprive those wronged by DSHS's actions of a remedy which the

*Immunity and the Release of Dangerous Inmates from State Institutions: Can the State Get Away with Murder?*, 33 BUFF. L. REV. 491 (1984) (arguing that quasi-judicial immunity, not discretionary immunity, provides the proper basis for immunity)).

[5]*Compare Guffey*, 103 Wn.2d at 153 ("there can be no liability as a master unless the servant is liable") *with Babcock*, 116 Wn.2d at 620 ("An agent's immunity from civil liability generally does not establish a defense for the principal").

Legislature contemplated they would have." *Babcock*, 116 Wn.2d at 620.

The Court of Appeals distinguished *Babcock* on the ground the result in that case was compelled by a provision in the statute at issue, RCW 26.44.060(3), which provides that nothing in the chapter shall be construed to abridge or supersede the remedies provided by the legislative abrogation of sovereign immunity. *Savage*, 72 Wn. App. at 490 n.6 (citing *Babcock*, 116 Wn.2d at 620). As no such provision exists in this case, the Court of Appeals concluded the Legislature must not have intended RCW 4.92.090 to apply.

What the court appears to have overlooked is that in *Babcock* the provision reaffirming the abolition of sovereign immunity was included because another provision in the same statute, RCW 26.44.056(3), immunized caseworkers from liability for the good faith placement of children into protective custody. As Petitioner correctly points out, such a provision is unnecessary in this case because the Legislature has granted no immunity to parole officers in the first instance.

In addition, the Court of Appeals' holding on the immunity issue is based on a premise we cannot sustain: that the immunity of a government agent will be extended to the State *unless expressly prohibited* by the Legislature.[6] Savage, 72 Wn. App. at 490. That conclusion simply cannot be reconciled with the legislative abrogation of sovereign immunity. That abrogation would be pointless if the Legislature were required, in order to give it effect, to reiterate it at every occasion in which it might apply. There is no basis for treating RCW 4.92.090 as a nullity, particularly as it is one of the broadest waivers of sovereign immunity in the country. *See* Comment, *Aboli-*

---

[6]"Thus, where the Legislature has not spoken, our courts have held that the State, like any other employer, is entitled to claim the protection of an employee's immunity where its liability is based on a respondeat superior theory." *Savage*, 72 Wn. App. at 490.

*tion of Sovereign Immunity in Washington*, 36 WASH. L. REV. 312, 313 (1961).

## B
### The Extension of Qualified Personal Immunity to the State

The proper starting point for a discussion of whether the State is immune for the qualifiedly immune acts of its officers must begin with the legislative abrogation of sovereign immunity.

Article II, § 26 of the Washington State Constitution provides: "[t]he legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." In 1961, the Legislature waived the State's sovereign immunity from civil liability. Laws of 1961, ch. 136, § 1 (codified as RCW 4.92.090). As subsequently amended, that section provides:

> The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation.

This provision operates to make the State presumptively liable in all instances in which the Legislature has *not* indicated otherwise.

Quite apart from the legislative mandate abrogating sovereign immunity, the different functions personal and governmental immunity are designed to serve support maintaining state liability in this context, even where the agent enjoys qualified personal immunity. One court has explained the difference as follows:

> [T]he fundamental reasons for the two immunities differ; for the officer it is to encourage unrestrained execution of responsibility, while for the sovereign it is to prevent judicial scrutiny of basic policies formulated by coordinate branches of government. To insulate the Government from liability for the inevitable mishaps which will occur when its employees perform their functions without fear of liability not only is unjust, but also serves no purpose for which sovereign immunity need exist.

*Downs v. United States*, 382 F. Supp. 713, 750 (M.D. Tenn. 1974) (in a Federal Tort Claims Act case it was unnecessary to decide whether government agents were immune, because the government would not be immune even if they were), *rev'd on other grounds*, 522 F.2d 990 (6th Cir. 1975); *see also Lutheran Day Care v. Snohomish County*, 119 Wn.2d at 108. The RESTATEMENT (SECOND) OF TORTS recognizes this notion:

> With respect to some government functions, the threat of individual liability would have a devasting [sic] effect, while the threat of governmental liability would not significantly impair performance.

RESTATEMENT (SECOND) OF TORTS § 895D cmt. j, at 420 (1979).

A fact and policy specific inquiry also suggests the rationale underlying the grant of qualified personal immunity to parole officers does not apply with equal force to the State. Parole officers supervising parolees are called upon to make difficult decisions under difficult circumstances. *Taggart v. State*, 118 Wn.2d 195, 215, 822 P.2d 243 (1992). Given these conditions, the prospect of personal liability may reasonably be expected to have an unduly inhibiting effect on the performance of their professional duties.

As was the case in *Babcock v. State*, 116 Wn.2d 596, 616-19, 809 P.2d 143 (1991), the same cannot be said about state liability. On the contrary, maintaining the potential of state liability, as established in RCW 4.92, can be expected to have the salutary effect of providing the State an incentive to ensure that reasonable care is used in fashioning guidelines and procedures for the supervision of parolees.

This concern is particularly acute given our recognition that "the State has a duty to take reasonable precautions to protect against reasonably foreseeable dangers posed by the dangerous propensities of parolees." *Taggart*, 118 Wn.2d at 217. We have also stated that "because of the dangers violent parolees present, adequate supervision

must be provided." *Taggart,* 118 Wn.2d at 215. In this regard, Amicus Washington Defense Trial Lawyers has submitted empirical data establishing that parolees are dangerous and pose a high risk of recidivism. *See* Br. of Amicus Curiae Washington Defense Trial Lawyers, app. A (Washington State Department of Corrections Recidivism Briefing Paper No. 5 (Feb. 1994)); Criminal Justice Inst., Inc., *The Corrections Yearbook (1993),* at 14-15.

■ In sum, given the legislative mandate abrogating sovereign immunity, the different purposes personal and government immunity are designed to serve, and the policy concerns just discussed, extending the qualified personal immunity of parole officers to the State would be not only judicially unwarranted but normatively unwise. Government liability, combined with qualified personal immunity for officers, is better suited to accommodate the concerns with which tort law is ultimately concerned. The benefits of maintaining this dichotomy in the liability structure have been identified by one commentator:

> exclusive governmental liability may have advantages from a deterrence point of view. By encouraging higher standards of care in the selection, training, equipment, and supervision of personnel, such a system can have at least as positive an effect on governmental performance as one based upon liability of the individual official. It would also protect the official from any paralyzing threat of direct personal liability, thus presumably improving morale and effectiveness.

(Footnote omitted.) George A. Bermann, *Integrating Governmental and Officer Tort Liability,* 77 COLUM. L. REV. 1175 (1977).

For the reasons just stated, the Court of Appeals' holding that the personal qualified immunity of parole officers runs to the State is reversed.

II

THE STATE'S FINANCIAL RESOURCE INSTRUCTION

The State cross-petitions from the Court of Appeals'

holding that the trial court did not err in refusing to instruct the jury that it could consider the State's financial resources.[7]

The State proposed the jury be instructed that in determining whether the State had acted reasonably the jury could consider the State's financial resources. Instruction 13 read:

> In determining whether the defendant's acts or failure to act were reasonable you may take into account the defendant's available resources and its resource allocation policy.

Clerk's Papers at 641.

The trial court denied the instruction, and the Court of Appeals affirmed, on the ground RCW 4.92.090 specifies the State shall be liable in the same manner as a private person and corporation, and on the ground the State cited no authority for the proposition a private person or corporation is entitled to have the jury consider its financial circumstance in evaluating the reasonableness of its acts. *Savage*, 72 Wn. App. at 495.

■ We sustain the result the Court of Appeals reached in this case because the State did not present evidence about its "available resources" or its "resource allocation policy." The only evidence relating to this issue was the testimony of parole officer Tawndra Schwamberg that the State did not have the funds to randomly test parolees on a routine basis for drug and alcohol use. Report of Proceedings (Feb. 14, 1992) at 89. A trial court is required to submit instructions to a jury on a theory of the case only where there is substantial evidence to support the theory. *Cooper's Mobile Homes, Inc. v. Simmons*, 94 Wn.2d 321, 327, 617 P.2d 415 (1980). The supporting facts for a theory and instruction must consist of more than speculation and

---

[7]The State argues that the denial of the instruction implicates the separation of powers doctrine. As did the Court of Appeals, we decline to reach the argument because it was made for the first time on appeal. *See Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 481, 843 P.2d 1056 (1993); *Savage*, 72 Wn. App. at 495 n.9.

conjecture. *Board of Regents of UW v. Frederick & Nelson,* 90 Wn.2d 82, 86, 579 P.2d 346 (1978).

The Court of Appeals' holding that the qualified personal immunity of parole officers extends to the State is reversed; its holding that the trial court did not err in refusing to instruct the jury on the State's available resources and its resource allocation policy is affirmed.

DOLLIVER, SMITH, JOHNSON, ALEXANDER, and TALMADGE, JJ., concur.

MADSEN, J. (dissenting) — The majority opinion constitutes a significant departure from prior law, and calls into question the continuing viability of nearly all our cases relating to the extension of qualified immunity to the State. Because I do not believe the change in direction is advisable, I respectfully dissent.

The majority justifies its departure on several bases, none of which stand up under scrutiny. The majority relies upon (1) a general rule in the RESTATEMENT (SECOND) OF AGENCY (1958) which does not reflect the general rule in this state where governmental liability is at issue; (2) an unpersuasive attempt to distinguish a number of our cases; and (3) policy said to support liability of the State for the actions of parole officers even where the individual parole officers are immune, although policy considerations in fact weigh in favor of the extension of immunity.

In addition, the majority relies upon RCW 4.92.090, enacted in 1961 and waiving sovereign immunity. The majority's view of the statute, however, is inconsistent with a line of cases extending from 1966 to 1992, cases which both precede and follow the decision in *Babcock v. State,* 116 Wn.2d 596, 809 P.2d 143 (1991), upon which the majority heavily relies. *Babcock,* which is distinguishable

from this case, stands alone as a decision where the immunity of a state employee was not extended to the State.

## A. RCW 4.92.090

The majority reasons that RCW 4.92.090, which abolishes sovereign immunity, operates to make the State presumptively liable in all instances in which the Legislature has not indicated otherwise.

RCW 4.92.090 was enacted in 1961. Laws of 1961, ch. 136, § 1. Contrary to the majority's reasoning, the statute does not state a rule that if there is tortious conduct, the government is liable. Instead, the statute says that the government is liable to the same extent as a private person or corporation. In 1966, this court noted that prosecuting attorneys are individually immune, as a matter of public policy, from prosecution for acts done in their official capacity. *Creelman v. Svenning*, 67 Wn.2d 882, 884, 410 P.2d 606 (1966). The court held that the public policy which requires quasi-judicial immunity for prosecutors also requires immunity for the state and county for the acts of the prosecutors in their official capacity. *Creelman*, 67 Wn.2d at 885.

The decision in *Creelman* followed by just a few years the enactment of RCW 4.92.090. Significantly, the decision was made in the face of the express argument made by the majority here—that the statutory abrogation of sovereign immunity forecloses the state and county from sharing the prosecutor's immunity. *Creelman*, 67 Wn.2d at 885. Contrary to the majority opinion, *Creelman* demonstrates that RCW 4.92.090 does not constitute a bar to extension of individual employees' immunities to the State (or other governmental employer). As is the case where private entities are involved, this court can and does continue to decide whether there is a sound legal basis for extending immunities. Sovereign immunity has been abolished. Development of the common law has not.

For over thirty years, the Legislature has known that

under this court's construction RCW 4.92.090 is not a bar to extension of an agent's immunity to the employing State or other governmental entity. Cases decided since *Creelman* have similarly addressed individual immunity which is extended to the State. *E.g., Guffey v. State*, 103 Wn.2d 144 (qualified immunity of law enforcement officer extended to governmental employer); *Lutheran Day Care v. Snohomish County*, 119 Wn.2d at 125-26 (reaffirming that respondeat tort liability is retained as basis for local entity tort liability for acts of officers, which requires that immunity for judicial and quasi-judicial officers in performance of official duties be extended to local entity), *cert. denied*, 113 S. Ct. 1044 (1993).

Given the long-standing legislative acquiescence in this court's rejection of the argument that the waiver of sovereign immunity means that the immunity of the individual cannot be extended to the government, it is misleading for the majority to suggest, as it does, that RCW 4.92.090 would be treated as a nullity contrary to legislative intent if the qualified immunity of parole officers is extended to the State.

## B. Agency Law

The majority also reasons that agency law dictates that the qualified immunity of the parole officers not be extended to the State. The general rule upon which the majority relies has not heretofore been the law in this state where governmental liability is at issue, and I believe its adoption in this case is unwise.

Initially, this court has extended individual immunity to the governmental employer in a number of cases. *Creelman*, 67 Wn.2d 882; *Guffey*, 103 Wn.2d 144; *Frost v. City of Walla Walla*, 106 Wn.2d 669. The agency principle upon which the majority relies did not require a different result in those cases. Indeed, the decision in *Creelman* to extend the indi-

vidual immunity to the governmental employer was made in the face of argument that "the immunity of one of two or more persons, who would otherwise be liable for a harm, does not bar recovery against the others." *Creelman*, 67 Wn.2d at 885 (the argument was based upon 4 RESTATEMENT OF TORTS § 880 (1939)). The court rejected the notion that immunity of one person may not be extended to another where the policy reasons for the immunity apply as well to the second person or entity. This conclusion was reached in precisely the kind of case now before the court—where a party is asserting that a general rule be applied to hold that immunity of a state agent does not extend to the State where the State is sued on the basis of respondeat superior.

Moreover, in *Frost*, this court overruled *Spencer v. King County*, 39 Wn. App. 201, 692 P.2d 874 (1984), where the Court of Appeals had refused to extend individual police officer immunity to the county under the involuntary commitment law. *Frost*, at 673-74. In *Spencer*, the court, like the majority in this case, relied in part upon RESTATEMENT (SECOND) OF AGENCY § 217 (1958) for its holding. In overruling *Spencer*, the court said that the decision there contradicted *Creelman*.

The RESTATEMENT (SECOND) OF AGENCY § 217 (1958) was cited in *Babcock*. First, the court noted the general rule that an agent's immunity generally does not extend to the principal. *Babcock*, 116 Wn.2d at 620. The court then recognized, however, that "personal immunities" of some government officials had nevertheless been extended to the government in this state. *Babcock*, 116 Wn.2d at 621 (citing *Creelman* and *Guffey*). The court distinguished those cases by saying that in each of them the State had "committed no acts of its own; the plaintiffs could only sue on the basis of respondeat superior." *Babcock*, 116 Wn.2d at 621. The court then said that the plaintiffs in *Babcock* alleged that DSHS's negligent supervision caused injury.

To the extent this analysis means that the government may not shield itself from negligent acts which are distinct

from those of the immune individuals, this analysis is sound. As the court said in *Babcock*, 116 Wn.2d at 622, existence of some tort liability would encourage DSHS, the agency there involved, to avoid negligent conduct and enable persons injured by DSHS to recover.

More important to this case, where the basis of the suit is respondeat superior, *Babcock* recognized that our cases have extended individual immunity to the government employer, and have done so despite the general rule of agency law relied on in this case by the majority. Contrary to the majority's implication in this case, *Babcock* does not stand for the proposition that RESTATEMENT (SECOND) OF AGENCY § 217 precludes extension of immunity in this case.

In short, as acknowledged in *Babcock*, and as reflected in our cases, § 217 does not represent the general rule in this State where the governmental employer is sued on the basis of respondeat superior.

## C. Prior Case Law

The majority attempts to distinguish cases extending individual immunity to the State.

The majority says that prior cases extending immunity to the State involve judicial or quasi-judicial immunity. It then summarily dismisses cases where the court has extended the individual's immunity to the government employer which does not involve judicial or quasi-judicial immunity, saying they are "not sound authority." Majority at 442.

Specifically, the majority says that judicial and quasi-judicial immunity are designed to protect the government, not the individual employee, from suit. Majority at 441. Protection of the public, and, in the case of judicial immunity, the independence of the judiciary, are purposes met by such immunities, and justify extending the individual's immunity to the governmental employer. Ma-

jority at 441. In contrast, the majority says, qualified immunity such as is granted to parole officers and caseworkers is intended to protect the individual from the unduly inhibiting effect the fear of personal liability would have on their performance of their jobs. Majority at 441.

Neither our cases nor common sense support the distinction drawn by the majority. In *Creelman,* where prosecutors' quasi-judicial immunity was addressed, the public policy identified was that

> [i]f the prosecutor must weigh the possibilities of precipitating tort litigation involving the county and the state against his action in any criminal case, his freedom and independence in proceeding with criminal prosecutions will be at an end.

*Creelman,* 67 Wn.2d at 885.

In *Frost,* the court held that statutory immunity granted to a police officer engaged in seizure and impoundment of a vehicle under the Uniform Controlled Substances Act must be extended to the employer city. The court relied upon the *Creelman* rationale, reasoning that the public policy underlying the immunity was

> to promote efficient and unhampered police action, free from the hindrance created if liability could be imposed on police for their good faith, objectively reasonable actions. To give the officers protection against liability, while allowing suits against the jurisdiction employing them, would defeat this purpose.

*Frost,* 106 Wn.2d at 673.

*Creelman* is founded on the policy that a prosecutor cannot effectively prosecute under the threat of individual liability. Without question the public's interest in prosecution of criminals is at issue, and accordingly the government's interest is at issue. Prosecutors must have the freedom and independence to do their jobs in the public interest.

Similarly, a police officer's ability to function as a police officer is also affected if the fear of personal liability

inhibits decision making and police action. That does not mean the purpose of the immunity is the protection of the individual. As in the case of quasi-judicial prosecutorial immunity, the purpose, as explained in *Frost*, is to assure unhampered and efficient police action. Again, it is the ability to do the job in the public interest that underscores the immunity.

In this case, as in *Frost*, avoidance of personal liability for the employee is not the purpose of the qualified immunity recognized in *Taggart v. State*, 118 Wn.2d 195. The purpose of the qualified immunity granted to parole officers is to enable them to perform a difficult job under exacting conditions where decisions must be made which affect both the parolee's liberty and the safety of the public, free of fear of lawsuits. *Taggart*, 118 Wn.2d at 215. The fundamental purpose is to provide the individual "parole officers the immunity they need *to perform their jobs effectively* . . . ." (Italics mine.) *Taggart*, 118 Wn.2d at 216.

Effective supervision of parolees is clearly in the public interest. Moreover, it is simply naive to think that the possibility of government liability would have no effect on the way the government's employees perform their jobs. The majority's implication that any immunity which is not judicial or quasi-judicial immunity is not designed to protect the public, and accordingly the government, violates common sense.

In addition, this notion that the function of qualified immunity of parole officers is to alleviate personal liability is questionable in the face of RCW 4.92.075. Under that provision, the State will satisfy a judgment entered against a state employee for acts or omissions while performing, or in good faith purporting to perform, official duties. Thus, for the most part, an employee performing his or her job should have little fear of personal liability in any case. The remaining, and perhaps greater concern, is the impact on job performance and ultimately public safety which

will result from refusing to extend qualified immunity to the State.

### D. Public Policy

The majority states that public policy supports a refusal to extend the qualified immunity of parole officers to the State, observing that the potential of state liability "can be expected to have the salutary effect of providing the State an incentive to ensure that reasonable care is used in fashioning guidelines and procedures for the supervision of parolees." Majority at 446.

This makes no sense. Without an extension of immunity the State will be liable on a respondeat superior theory for a parole officer's negligence regardless of whether he or she substantially complied with directives and regulations. What difference would it make whether the State drafted the guidelines with reasonable care, if liability for the employee's negligence exists in any event?

More importantly, the State may be sued for its own independent acts of negligence. *See Babcock,* 116 Wn.2d at 621. Although I will not attempt to list all the actions which might give rise to liability for the State's own negligence, there could, for example, be negligence in training and supervising parole officers or in establishing guidelines and procedures, depending upon the circumstances.

Where parole supervision is involved, additional policy considerations are implicated. In *Taggart,* the court held that the Indeterminate Sentence Review Board enjoys quasi-judicial immunity and is absolutely immune for its release decisions. *Taggart,* 118 Wn.2d at 207. Despite this immunity, however, release decisions, as well as supervisory decisions, will be inhibited if the parole officers' qualified immunity does not extend to the State. The reason is that, like the parole officers, the Board cannot help but be affected by the potential for State liability resulting from its release decisions. If the State may be subsequently liable for a parole officer's negligent supervision of an inmate

with dangerous propensities, the Board is apt to think twice about paroling inmates who otherwise would be paroled. One might initially think this is in fact a side benefit to no extension of immunity (no release of potentially dangerous inmates), but further reflection reveals the flaw in that thinking. Parole provides a means of supervising the parolee as he or she rejoins society. Through that supervision there is the opportunity for the parolee's integration to occur while some control of the parolee's life and conduct is maintained. The benefits of monitored release are lost where parole is not granted. Those benefits for inmates eligible for parole should not be lost based upon the possibility that the State might be liable for some parolee's violent conduct.

The policy considerations are not confined, of course, to performance of the job, here parole supervision. The importance of an available remedy for the injured party weighs heavily in the balance. In general, leaving a wronged claimant without a remedy "runs contrary to the most fundamental precepts of our legal system." *Lutheran Day Care*, 119 Wn.2d at 105. The public policy of providing a remedy for wronged claimants does not always tip the scales, though, as is evident from our cases where the policy in favor of the immunity outweighs this policy. *E.g., Creelman, Frost.* Moreover, in *Taggart* the court did not adopt an absolute immunity for parole officers. Instead, the parole officer is immune only for actions in furtherance of a statutory duty and in substantial compliance with the directives of superiors and relevant regulatory guidelines. *Taggart*, 118 Wn.2d at 216. Victims of violent felons are not deprived of a remedy where the parole officer did not substantially follow directives and guidelines; neither the individual parole officer nor the State would have immunity in that case.

Moreover, if there is negligence on the part of the State aside from the individual parole officer's supervision of the parolee, the State may be sued on its own account.

On balance, sound policy considerations favor extension of the parole officers' qualified immunity to the State.

### E. Babcock v. State

Finally, the majority's assessment of our cases, and in particular its heavy reliance upon *Babcock*, is unwarranted. Our cases do not support the majority opinion, which is why the majority finds it necessary to distinguish or disapprove every one of them except *Babcock*. Despite the majority's heavy reliance, even *Babcock* is poor support for the majority's position.

In *Babcock*, the court based its refusal to extend the qualified immunity of caseworkers to DSHS on three grounds. First, the court noted that while caseworkers had statutory immunity for taking children into seventy-two-hour protective custody, the Legislature made it clear in RCW 26.44.060(3) that it did not intend to supersede or abridge remedies in RCW 4.92 (actions against the State). The court applied the statute by analogy to the common-law immunity it adopted, and concluded the individual's immunity should not be extended to the State. There is no similar statutory provision at issue in this case, i.e., no indication that the Legislature intended that the *Creelman* rationale not be applied to support extension of individual employee immunity to the governmental employer.

Second, *Babcock* cited the RESTATEMENT (SECOND) OF AGENCY § 217, but expressly distinguished cases where the basis of asserted state liability was respondeat superior. As explained, § 217 does not compel the majority's result in this case.

Third, *Babcock* also emphasized public policy considerations. As explained above, public policy considerations weigh in favor of extending the qualified immunity of the parole officer to the State in this case. Moreover, this court has recently recognized that the public policy considerations concerning caseworkers involved in placing children are different from those involved in parole supervi-

sion. In *Taggart*, 118 Wn.2d at 216, the court declined to require that the parole officer's actions be reasonable as a prerequisite for the qualified immunity. In contrast, a showing of reasonableness was required for the DSHS caseworkers to invoke the qualified immunity. *See Babcock*, 116 Wn.2d at 618. The court in *Taggart* explained: "The standard we announced in *Babcock* was appropriate because of the unique circumstances inherent in the foster care placement of children". *Taggart*, 118 Wn.2d at 216.

In *Lutheran Day Care*, we noted that the *Babcock* decision "somewhat" limited *Creelman*, because the State did not get the benefit of the qualified or absolute immunity of the caseworkers (as had been true in every other case where the question of extending individual immunity to the State had been addressed). *Lutheran Day Care*, 119 Wn.2d at 102. *Lutheran Day Care* thus frankly recognized what the majority fails to: *Babcock* is the only case where such immunity was not extended. As the court expressly recognized in *Taggart*, the policy concerns at issue in *Babcock* are not the same in the case of parole supervision.

Lastly, the majority says that *Babcock* impliedly overruled *Guffey*. Majority at 439 n.3. Having expressly distinguished *Guffey*, *Babcock* cannot be said to have overruled that case. However, unlike the result in *Babcock*, the majority opinion in this case does impliedly overrule *Guffey*, and *Frost* as well. *See* Majority at 443-44. Thus, there will be a notable consequence of the majority opinion—it is likely that state and local governmental employers no longer possess the qualified immunity recognized in those opinions.[8]

I would hold that the qualified immunity of a parole officer does extend to the State. Accordingly, I would affirm

---

[8]In *Guffey*, the court said that under the theory of respondeat superior, the State and the Washington State Patrol could not be held liable for a trooper's acts where the officer had a qualified immunity for those acts. The majority criticizes the authority cited in *Guffey* for this proposition. Majority at 442-43. However, the qualified immunity of a police officer was extended to the State in *Frost v. City of Walla Walla*, 106 Wn.2d 669, 724 P.2d 1017 (1986), and the analysis in that case, as is *Guffey*'s result, is consistent with *Creelman*.

the Court of Appeals' holding that the trial court erred by refusing to give the State's proffered instruction on availability of that immunity if the requirements set forth in *Taggart* are satisfied.

DURHAM, C.J., and GUY, J., concur with MADSEN, J.

Reconsideration denied January 3, 1996.