[No. 13097-1-II.   Division Two.   February 20, 1992.]

LORRAINE PLOTKIN, *Appellant*, v. THE STATE OF WASHINGTON, ET AL, *Respondents*.

*David W. Murdach,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Jon P. Ferguson, Assistant,* for respondents.

MORGAN, A.C.J. — Lorraine Plotkin appeals from a summary judgment dismissing her claim for damages sustained when she was viciously assaulted by a former parolee. We affirm.

In 1975, after already accumulating a history of sexually deviant incidents, Kenneth Doran was convicted of a sexually motivated burglary in the second degree. He was sentenced to 15 years, but the sentence was suspended on condition that he participate in the sexual psychopath program at Western State Hospital. He failed that program, and on June 3, 1977, the trial court committed him to the Department of Corrections.

On January 29, 1980, Doran was granted parole by the Board of Prison Terms and Paroles (Board).[1] Before granting parole, the Board did not seek or obtain the approval of the trial court. A condition of his parole was that he "maintain satisfactory participation" in a program of mental health treatment.

On August 26, 1980, Doran's mental health treatment was terminated by his therapist. On September 2, 1980, the therapist wrote to Frank Brennan, Doran's then parole officer, and explained that termination was "due to 'the fact that Mr. Doran was not interested nor motivated in working on personal change and to the fact that he was unable to keep daily appointments due to his work schedule . . .."

On December 31, 1980, Brennan wrote a progress report to the Board in which he noted that one of Doran's conditions was to maintain mental health treatment, and that he had been terminated from such treatment on August 26, 1980. However, Brennan went on to state that

> Doran has maintained a satisfactory adjustment since he was granted parole on February 1, 1980. He has complied with all of his parole conditions. He has had steady, full time employment and has a stable residence with his brother and sister-in-law. He has no negative contacts with the law enforcement agencies.

Before August 10, 1981, Stuart Forsyth became Doran's parole officer. On August 10, Forsyth wrote a report to the Board in which he recommended that Doran be granted a conditional discharge from supervision. In support of the recommendation, he stated that Doran had complied with his parole conditions and maintained a satisfactory adjustment to the community. He did not note the previous termination from therapy.

Later in 1981, the Board granted Doran a conditional discharge from supervision. In April 1983, it granted him a final order of discharge. RCW 9.96.050. In neither 1981 nor

---

[1] The Board of Prison Terms and Paroles is now known as the Indeterminate Sentence Review Board. RCW 9.95.001; RCW 9.95.009.

1983 did the Board seek or obtain approval of the trial court.

On August 13, 1983, Doran broke into Plotkin's home while she was sleeping. He severely beat her, causing facial disfigurement and brain damage.

Plotkin sued the State of Washington, the Board, and the Department of Corrections.[2] In her first amended complaint, she set forth essentially three claims. In the first, she alleged that the State and the Board were liable because the Board acted with negligence, gross negligence and willful/wanton misconduct when it granted parole, conditional release and final release to Doran.[3] In the second, she alleged that the State, the Board and the Department of Corrections were liable because the two parole officers acted with negligence, gross negligence or willful/wanton misconduct in failing to disclose certain information to the Board, including that Doran was a sexual psychopath and had dropped out of treatment due to lack of motivation. In the third, she alleged that the State and the Board were liable because the Board violated RCW 71.06.091 when it failed to obtain the approval of Doran's sentencing court before granting parole, conditional discharge and final discharge. She did not allege negligent supervision of Doran, as opposed to negligent reporting to the Board, and indeed, it appears she could not have done so. Doran was not on active supervision after 1981, and not on any supervision at the time of the assault.

The State moved for summary judgment of dismissal on all claims. The trial court granted the motion on the ground that each defendant enjoyed absolute immunity.

---

[2]Plotkin also sued Western State Hospital, but no claims against Western are pursued here.

[3]In particular, she alleged that the Board failed to give due consideration to Doran's status as a sexual psychopath, and to the recommendation of a prison sociologist that Doran not be released without psychiatric clearance. In her appellate brief, she also argues that the Board failed to give due consideration to Doran's overall criminal history.

■ We engage in the same inquiry as the trial court. *Taggart v. State*, 118 Wn.2d 195, 199, 822 P.2d 243 (1992); *Wendle v. Farrow*, 102 Wn.2d 380, 383, 686 P.2d 480 (1984). We take the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Taggart v. State, supra* at 199; *Jenson v. Scribner*, 57 Wn. App. 478, 480, 789 P.2d 306 (1990). Summary judgment is appropriate if reasonable persons could reach but one conclusion. *Carlson v. Gibraltar Sav.*, 50 Wn. App. 424, 428, 749 P.2d 697 (1988).

■ The trial court ruled correctly when it dismissed the claim based on the Board's decisions to grant parole, conditional discharge and final discharge. In *Taggart v. State, supra*, the plaintiff claimed that members of the Indeterminate Sentence Review Board and the State were liable because the Board had negligently paroled one Brock from prison. The Supreme Court held that the Board had absolute quasi-judicial immunity for release decisions. It did not expressly discuss whether that immunity extended to the State as opposed to members of the Board. However, it necessarily concluded that it did, for it affirmed the dismissal of Taggart's negligent release claim against the State. *Taggart*, at 228-29. In this case, then, the State and the Board are absolutely immune from liability due to the Board's decision to parole Doran from prison in 1980.

Moreover, *Taggart* encompasses decisions to grant conditional and final discharges as well as decisions to grant parole. All three types of decision are clearly and equally quasi judicial, and there is no less reason to attach absolute quasi-judicial immunity to the last two than to the first. Thus, the State and the Board are absolutely immune not only from liability due to the Board's 1980 parole decision, but also from liability due to the Board's later decisions to grant conditional and final release.

The absolute immunity afforded by *Taggart* is not affected by the fact that Plotkin alleges gross negligence and willful/wanton misconduct in addition to ordinary negligence. The *Taggart* court expressly stated that the Board is entitled to

the same immunity as judges. *Taggart v. State, supra* at 203-07. Judicial immunity precludes liability even when conduct is malicious or corrupt. *Pierson v. Ray*, 386 U.S. 547, 554, 18 L. Ed. 2d 288, 294, 87 S. Ct. 1213 (1967); *Filan v. Martin*, 38 Wn. App. 91, 96, 684 P.2d 769 (1984); *Burgess v. Towne*, 13 Wn. App. 954, 958, 538 P.2d 559 (1975). A fortiori, such immunity also precludes liability due to conduct that is grossly negligent or willful and wanton.

■ The trial court ruled correctly when it dismissed the claim based on reports made to the Board by the two parole officers. At page 213, *Taggart* says:

> We hold that parole officers are entitled to quasi-judicial immunity only for those functions they perform that are an integral part of a judicial or quasi-judicial proceeding. Thus *when a parole officer performs functions such as* enforcing the conditions of parole or *providing the Board with a report to assist the Board in determining whether to grant parole, the officer's actions are protected by quasi-judicial immunity.* But when the officer takes purely supervisory or administrative actions, no such protection arises.

(Italics ours.)

The italicized language is dictum, because *Taggart* did not involve a situation in which a parole officer was alleged to have made a negligent report to the Board. Nevertheless, it appears to reflect the current view of the Supreme Court, and thus we adopt it as our view also. It follows that each defendant is absolutely immune from liability due to the way in which the two parole officers reported to the Board, and that that is true even if they acted with gross negligence or willful and wanton misconduct.

■ The trial court ruled correctly when it dismissed the claim based on RCW 71.06.091.[4] According to that statute,

---

[4]RCW 71.06.091 provides:

"**Postcommitment proceedings, releases, and further dispositions.** A sexual psychopath committed pursuant to RCW 71.06.060 shall be retained by the superintendent of the institution involved until in the superintendent's opinion he is safe to be at large, or until he has received the maximum benefit of treatment, or is not amenable to treatment, but the superintendent is unable to render an opinion that he is safe to be at large. Thereupon, the superintendent of the institution involved shall so inform whatever court committed the

"the superintendent of the institution involved shall never release the sexual psychopath from custody without a court release as herein set forth." As the State correctly argues, the superintendent referred to in RCW 71.06.091 is the superintendent of one of the state hospitals, not the parole board or Director of Corrections, RCW 71.06.010, and the custody referred to is custody in a sexual psychopathy program at a state hospital. *See* RCW 71.06.010. Thus, when a person fails to complete his or her sexual psychopathy treatment program, the superintendent of the hospital at which the program is located is required to return the person to the sentencing court for further action. In this case, that was done when Western State returned Doran to court in 1977, and the court committed him to prison.

Affirmed.

ALEXANDER, J., and WORSWICK, J. Pro Tem., concur.

Reconsideration denied April 7, 1992.

Review denied at 119 Wn.2d 1022 (1992).

---

sexual psychopath. The court then may order such further examination and investigation of such person as seems necessary, and may at its discretion, summon such person before it for further hearing, together with any witnesses whose testimony may be pertinent, and together with any relevant documents and other evidence. On the basis of such reports, investigation, and possible hearing, the court shall determine whether the person before it shall be released unconditionally from custody as a sexual psychopath, released conditionally, returned to the custody of the institution as a sexual psychopath, or transferred to the department of corrections to serve the original sentence imposed upon him. The power of the court to grant conditional release for any such person before it shall be the same as its power to grant, amend and revoke probation as provided by chapter 9.95 RCW. When the sexual psychopath has entered upon the conditional release, the state board of prison terms and paroles shall supervise such person pursuant to the terms and conditions of the conditional release, as set by the court: *Provided*, That the superintendent of the institution involved shall never release the sexual psychopath from custody without a court release as herein set forth."