[No. 37844-9-I. Division One. September 22, 1997.]

TOM BISHOP, *as Personal Representative*, ET AL., *Appellants*, v. STEVEN MICHE, *Defendant*, KING COUNTY, *Respondent*.

*David A. Williams*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *John W. Cobb, Deputy*, for respondent.

G<span>ROSSE</span>, J. — Actions or inactions relating to a proba-
tion officer's awareness of an error in sentencing are
protected by quasi-judicial immunity and shield the of-
ficer's employer from liability as well as the officer.
However, a county may be held liable if a probation officer
has failed in his or her duty to enforce a convicted
criminal's sentencing conditions by reporting probation
violations. Because material issues of fact remain as to
whether the probation officer acted negligently in carry-
ing out her duties, the trial court erred in dismissing the
negligent supervision claim at issue here.

## FACTS

When driving while intoxicated, Steven Miche was
involved in an accident which killed five-year-old Alexan-
der Bishop. This fatality was the culmination of Miche's
long history of driving while intoxicated. At the time he
killed Alexander Bishop, he was on probation for a
suspended sentence for driving a vehicle while under the
influence of intoxicating liquor (DUI). He received a one-
year suspended sentence because the trial court failed to
realize that Miche was using an alias under which no
previous convictions were recorded. His real driving rec-
ord revealed three DUI convictions in the previous four
years, driving with a suspended license, a revocation of
his driver's license, and outstanding warrants from mu-
nicipal court.

Instead of ordering jail time, the trial court placed
Miche under the supervision of a probation officer.
Because the driving record under his alias noted that his
driver's license had been canceled due to a "fraudulent
application," Miche's probation officer quickly realized
that Miche's full record had not been before the court.
The next day, the officer sent an advisory report to the
district court advising it that "Steven W. Williams also
appears to use an AKA of Steven W. Miche. DOL records
are maintained under MICHE, STEVEN WALTER . . .
and driving privileges are revoked." No action resulted
from this notification.

The probation officer arranged to have Miche arrested at his first probation appointment in order for him to serve two months outstanding jail time from a previous DUI conviction. After his release from jail on July 31, 1992, Miche began his probation. At the end of August, Miche was arrested for driving with a suspended license. His probation counselor requested a review hearing. On November 6, the district court held a review hearing on the charge of driving while licensed suspended. Miche told the court that he was to begin alcohol treatment the following Monday. Based on the condition that he enroll in the treatment program and continue attending Alcoholics Anonymous (AA) meetings, the trial court did not revoke his probation. Two days later, while Miche was again driving intoxicated, his vehicle collided with the Bishops' vehicle, killing Alexander Bishop. He pleaded guilty to vehicular homicide.

The Bishops sued Miche for wrongful death and King County (County) for negligent supervision by a probation officer. After filing their complaint, they moved to amend the complaint to include a claim of negligent hiring. The court granted the County's motion for summary judgment.

## ANALYSIS

The Bishops claim that the probation officer negligently failed to alert the court about the effect Miche's fraud had on his sentence. This claim is devoid of merit. A probation officer's responsibility is to carry out the orders of the court after a defendant has been sentenced;[1] it is not to second-guess a court's sentence. Moreover, absolute quasi-judicial immunity shields the County from liability on this issue. A government official, such as a probation officer, is entitled to an absolute quasi-judicial immunity for those functions he or she performs that are an integral part of judicial or quasi-judicial

---

[1] Former RCW 9.95.210, *as amended by* Laws of 1987, ch. 202, § 146.

proceedings.[2] Sentencing is, without question, an integral part of the judicial process. Accordingly, because it is an action that absolute quasi-judicial immunity covers, a county may not be sued because of a mistake in sentencing.[3] This extends to any claim that a probation officer failed to adequately advise the trial court of its mistake. Moreover, the record reflects that the probation officer did all that she could do to notify the court of the sentencing error.

The Bishops also claim that had Miche's probation officer properly supervised Miche and had she reported his violations of probation, Miche would have been in jail and, therefore, their son would not have been killed. The County responds that it cannot be held liable on this basis because probation officers do not have a duty to prevent the tortious acts of probationers committed against third parties.

 Washington follows the rule that no duty exists to prevent a third person from causing physical injury to another.[4] An exception is if " 'a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct[.]' "[5] As to whether a probation officer has a duty to control the conduct of the probationers he or she supervises, our Supreme Court has resolved this issue in the equally applicable context of parole officers. In *Taggart*, the Supreme Court held that since parole officers were responsible for controlling parolees, a special relationship arose such that a parole officer had a duty to prevent parolees from causing injuries by taking "reasonable precautions to protect against reasonably foreseeable

---

[2]*Taggart v. State*, 118 Wn.2d 195, 210-13, 822 P.2d 243 (1992).

[3]*See Savage v. State*, 127 Wn.2d 434, 899 P.2d 1270 (1995).

[4]*Taggart*, 118 Wn.2d at 218.

[5]RESTATEMENT (SECOND) OF TORTS § 315 (1965), *quoted in Taggart*, 118 Wn.2d at 218.

dangers posed by the dangerous propensities of parolees[.]"[6]

The County attempts to distinguish district court probation officers from state parole officers on the basis that parole officers have the ability to arrest a parolee, while district court probation officers do not have the same power to exert full custodial control over probationers. This misses the point of *Taggart*, which did not rely on whether a parole officer had full custodial control (although it did cite the statute which gives parole officers this power). Rather, the court focused on aspects of the " 'definite, established and continuing relationship' " that parole officers have with their parolees that demonstrated that parole officers "take charge" of parolees:[7]

> Parole officers have the statutory authority under RCW 72.04A.080 to supervise parolees. The State can regulate a parolee's movements within the state, require the parolee to report to a parole officer, impose special conditions such as refraining from using alcohol . . . . The parole officer is the person through whom the State ensures that the parolee obeys the terms of his or her parole. Additionally, parole officers are, or should be, aware of their parolees' criminal histories, and monitor, or should monitor, their parolees' progress during parole. Because of these factors, we hold that parole officers have "taken charge" of the parolees they supervise for purposes of § 319.[8]

Probation officers exert similar control over probationers. Even though they cannot arrest probationers, they are the officers charged by the government to enforce probationers' compliance with the terms of their probation. If the probation officer is aware that the probationer is violating the terms of his or her probation, the officer

---

[6]*Taggart*, 118 Wn.2d at 217.

[7]*Taggart*, 118 Wn.2d at 219.

[8]*Taggart*, 118 Wn.2d at 219-20.

must alert the court.[9] A method that district court probation officers have to enforce compliance is to report violations to the court. This is demonstrated by a recent case in which the Supreme Court affirmed a jury's determination that parole officers breached their duty, in part, because the officers failed to detect and report a parolee's use of drugs.[10] Thus, reporting violations is a method of controlling a parolee or a probationer and if a parole or probation officer fails to appropriately use this method, the officer may subject his or her employer to liability.[11]

A probation officer's duty to exercise reasonable care to control the probationer and to prevent him or her from doing reasonably foreseeable harm is triggered when a probationer's criminal history and progress during probation show that the probationer is likely to cause bodily harm to others if not controlled.[12] Here, in order to determine whether the probation officer discharged her duty to supervise, the trier of fact must look at whether she enforced the terms of the probation and whether she complied with written policies and practices of the office.

The court's sentencing order required Miche to "[h]ave no violations of law during this period." It also required that Miche

> [b]e placed on probation with the King County District Court Probation Department for 24 months and abide by all terms, conditions, rules and regulations of the Probation Department for your conduct during this period.

The probation officer required Miche to meet with her twice a month, attend Alcoholics Anonymous meetings three times a week, not consume alcohol, and she suggested he seek inpatient alcohol treatment.

---

[9]RCW 9.95.220.

[10]*Savage*, 127 Wn.2d at 436-37. The full facts of *Savage* are set forth in *Savage v. State*, 72 Wn. App. 483, 487, 864 P.2d 1009 (1994).

[11]We are aware that another division of this court held to the contrary in *Plotkin v. State*, 64 Wn. App. 373, 378, 826 P.2d 221, *review denied*, 119 Wn.2d 1022 (1992), but we decline to follow its reasoning.

[12]*See Taggart*, 118 Wn.2d at 219-20.

The manual of the probation department requires probation counselors to report to the court all violations of the law by probationers. It also specifies:

> If the probation conditions imposed by the sentencing judge specify no alcohol or illicit drug use, counselors will report in writing all alcohol/drug use to the court within five (5) days.
>
> . . . .
>
> If the probationer is out of compliance with probation conditions other than those listed above, the counselor may use his/her discretion in how to get the probationer back into compliance. If after sixty (60) days the probationer is still not in compliance, the counselor will notify the court in writing. If the counselor is unsure of the action needed he/she will consult with his/her supervisor.

Under the County's version of the facts, it asserts that the probation officer fulfilled her duty within office policy. This ignores the standard of review on summary judgment under which we view all facts in the light most favorable to the nonmoving party. Viewing the facts in the light most favorable to the Bishops, the probation officer had sufficient information about Miche to cause her to be concerned that he was violating his probation terms and also to cause her to be concerned that he might start drinking and driving again. Significantly, the probation officer knew that Miche was a chronic drunk driver. She also knew that he was arrested for driving with a suspended license in September, only a month after he had been released from jail. Despite knowing of his arrest and despite her awareness of his previous convictions, in October she reduced the frequency of their meetings to once a month.

Additionally, she may have known that Miche may have driven to his first meeting with her even though his license was revoked. His sentence expressly required that he was not to break the law and she was required to report any violations of the law. Also, she received a copy of a report in which Miche admitted that he had consumed alcohol

during his probation. She did not, however, discuss this incident with Miche. Her supervisor thought that she should have discussed the matter with him or increased monitoring of his AA attendance.

The probation officer was also aware that Miche failed to keep an appointment necessary to make financial arrangements for the alcohol treatment program. This fact was not reported to the court and Miche later told the court at his review hearing that he was enrolled in the program. The probation officer was not present at the hearing to clarify whether he made the necessary financial arrangements.

Finally, while she required him to attend AA three times a week, the AA logs that he turned in to her revealed that he attended AA only approximately 10 times in three months. Had he followed her instructions, he would have attended AA over 40 times in three months. The probation counselor admitted that Miche's attendance in October was "insufficient to maintain sobriety." She stated she believed it was insufficient because he was a "late stage chronic alcoholic, treatment pending, no apparent support system. AA was the one support system. . . . It would be my concern that he didn't have sufficient support." Despite this knowledge, she reported to the court only that:

> Mr. Miche was convicted on the new DWLS charge of 8/2/92 in Renton Municipal Court on 10/14/92. He was given 20 days in jail and a $500 fine. Mr. Miche attends AA (somewhat sporadically) and is scheduled to begin intensive alcohol treatment at SECAC on 11/9/92. He cooperates fully with supervision and seems to be intent on complying with the court order.

Based on this sketchy report and the belief that Miche would be enrolling in the alcohol treatment program, the court did not revoke his probation.

■■ These facts present factual questions for a trier of fact to determine whether the probation officer breached

her duty. The County argues that the Bishops did not show that the probation officer's actions or inactions were the proximate cause of the Bishops' injuries and the County also contends that the fact that the court in November released Miche was an intervening cause that broke the chain of causation. These arguments cannot be resolved as a matter of law as they also present factual questions for the trier of fact.

■ The Bishops claim that the County is liable for the negligent hiring or supervision of the probation officer because she had problems with alcohol in the past. Beyond bare assertions, the Bishops have not shown that the probation officer's problems with alcohol in the past influenced her current treatment of her cases, much less that the County negligently hired her. Mere speculation is not sufficient to support a claim and the trial court properly rejected it.

## CONCLUSION

The trial court erred in dismissing the Bishops' complaint because, although the County cannot be held liable for the sentencing error, there are triable issues with respect to the Bishops' negligent supervision claim.

However, the trial court correctly rejected the Bishops' claim that the probation officer was negligent in her method of reporting the sentencing error caused by Miche's use of an alias to either the original sentencing court or to the November reviewing court. Absolute quasi-judicial immunity shields the County from any liability based on this claim.

We remand for further proceedings consistent with this opinion.

KENNEDY, A.C.J., and ELLINGTON, J., concur.

Reconsideration denied December 5, 1997.

Review granted at 134 Wn.2d 1024 (1998).