[No. 66380-7.   En Banc.]
Argued November 17, 1998.    Decided March 25, 1999.

TOM BISHOP, ET AL., *Respondents*, v. STEVEN MICHE,
*Defendant*, KING COUNTY, *Petitioner.*

*Norm Maleng, Prosecuting Attorney*, and *John W. Cobb, Deputy*, for petitioner.

*David A. Williams*, for respondents.

*Gary N. Bloom, Daniel E. Huntington*, and *Debra L. Stephens* on behalf of Washington State Trial Lawyers Association, amicus curiae.

*Christine O. Gregoire, Attorney General*, and *Glen A. Anderson, Assistant*, on behalf of the State of Washington, amicus curiae.

MADSEN, J. — This is a negligence action brought by the parents of a child killed in an automobile accident caused by a King County probationer who was intoxicated at the time of the accident. The parents brought a wrongful death action against the probationer and the County, alleging that the County negligently supervised the probationer. The trial court granted the County's motion for summary judgment.

At issue is whether the duty recognized in *Taggart v. State*, 118 Wn.2d 195, 822 P.2d 243 (1992), that a state parole officer has a duty to protect others from reasonably foreseeable danger resulting from the dangerous propensities of parolees, also applies in the context of a county probation officer and probationers. Also at issue is whether as a matter of law quasi-judicial immunity precludes liability under these facts.

## FACTS

Steven Miche was on King County probation for a suspended sentence for driving while under the influence of alcohol when he was involved in the accident that caused Alexander Bishop's death. Miche was intoxicated at the time of the accident. His suspended sentence had been imposed because at his arraignment on May 1, 1992, Miche used an alias of Steven W. Williams. The sentencing court did not realize that Miche was using an alias or that his driving record under his real name showed three convic-

tions for driving under the influence in the previous four years, driving while his license was suspended, revocation of his driver's license, and outstanding warrants from municipal court. Miche was ordered to refrain from any new violations of the law for 24 months, and ordered to "[b]e placed on probation with the King County District Court Probation Department for 24 months and abide by all terms, conditions, rules and regulations of the Probation Department . . . during this period." Clerk's Papers (CP) at 558.

Miche's probation officer, Susan Mendenhall, realized that the full record had not been before the court, discovered his true name and record, and sent an advisory report to district court, which had jurisdiction to administer probation, that "Steven W. Williams also appears to use an AKA of Steven W. Miche. DOL records are maintained under MICHE, STEVEN WALTER . . . and driving privileges are revoked." CP at 562. Mendenhall did not request court action, and none resulted.

Mendenhall had Miche arrested at their first meeting after she learned that there were outstanding arrest warrants in Renton municipal court, and he served two months outstanding jail time. Upon his release, she required, and he agreed, to attend Alcoholics Anonymous meetings twice a week, not consume alcohol, and submit to urinalysis tests. She also tried to enroll him in inpatient alcohol treatment. The probation department manual requires a probation officer to report violations of probation to the court, stating that where the court conditions parole on no alcohol or illicit drug use, such a report must be made within five days. CP at 111. However, where the probationer fails to comply with other conditions concerning alcohol and drug use, the probation officer is to try to get the probationer within compliance using his or her discretion, but must notify the court if after 60 days the probationer is not in compliance. *Id.*

On August 27, 1992, Miche was charged in Renton Municipal Court with driving while his license was suspended.

As a result, Mendenhall requested a review hearing in Aukeen District Court, and a review hearing was scheduled for November 6. In the meantime, on October 14, 1992, Miche was convicted of driving while his license was suspended. At the review hearing, Mendenhall informed the court in writing that Miche was convicted on the Renton charge and was given 20 days in jail and a $500 fine. She stated: "Mr. Miche attends AA (somewhat sporadically) and is scheduled to begin intensive alcohol treatment at SECAC on 11/9/92. He cooperates fully with supervision and seems to be intent on complying with the Court order." CP at 114. Mendenhall made no recommendations for disposition and deferred to the court's decision as to a proper disposition for Miche's violation of the court order. The district court declined to revoke probation, allowing Miche to begin the scheduled treatment.

Two days later, November 8, 1992, Miche drove while intoxicated and caused the accident resulting in Alexander's death. Miche pleaded guilty to vehicular homicide.

The Bishops then brought suit against Miche and King County. The Bishops alleged that King County (County) negligently failed to supervise Miche. The superior court granted the County's motion for summary judgment. The Bishops appealed, and the Court of Appeals reversed. *Bishop v. Miche*, 88 Wn. App. 77, 943 P.2d 706 (1997), *review granted*, 134 Wn.2d 1024 (1998).

## ANALYSIS

We are reviewing a grant of summary judgment and therefore make the same inquiry as the trial court, i.e., summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Taggart*, 118 Wn.2d at 198-99. The facts and reasonable inferences from the facts are considered in the light most favorable to the nonmoving party. *Id.* at 199. Questions of law are reviewed de novo. *Sherman v. State*, 128 Wn.2d 164, 183, 905 P.2d 355 (1995).

Plaintiffs maintain that Miche's county probation officer negligently supervised him and this negligence proximately caused their son's death. The County maintains that King County District Court's Probation Division is a part of the district court and its sole function is to provide probation services to the county's district courts. Accordingly, the County contends, acts of the probation division are a fundamental part of the judicial process to which quasi-judicial immunity attaches. The County further contends that the district court probation department does not have a special relation with a probationer giving rise to a duty to control a probationer.

The Court of Appeals held that the County owed a duty to control Miche. The court relied upon the decision in *Taggart*, 118 Wn.2d 195, where we held that the state may be liable for the negligence of a parole officer who fails to use reasonable care in supervising a parolee whose dangerous propensities pose a reasonably foreseeable danger to others. In *Taggart*, we acknowledged the rule that generally one has no duty to prevent a third party from causing harm to another. We also recognized, however, the exception stated in RESTATEMENT (SECOND) OF TORTS § 315 (1965) which provides that there may be such a duty where there is a special relation between the actor and the third person. Such a special relation exists when one takes charge of a third person whom he or she knows or should know is likely to cause bodily harm to another if not controlled, and the actor has a duty to control the third party to prevent him or her from doing such harm. RESTATEMENT (SECOND) OF TORTS § 319. This duty arises where there is a " 'definite, established and continuing relationship between the de-fendant and the third party.' " *Taggart*, 118 Wn.2d at 219 (quoting *Honcoop v. State*, 111 Wn.2d 182, 193, 759 P.2d 1188 (1988)). A custodial relationship is not required. *Taggart*, 118 Wn.2d at 222-23.

We said in *Taggart* that this duty arises only when it has been shown that the parole officer lacks absolute and quali-fied immunity for the actions claimed to be negligent.

However, we later held that qualified personal immunity for parole officers recognized in *Taggart* does not extend to the State. *Savage v. State*, 127 Wn.2d 434, 899 P.2d 1270 (1995). Therefore, if the parole officer fails to take reasonable care to control the parolee, but nevertheless acts in furtherance of a statutory duty and in substantial compliance with the directives of superiors and relevant regulatory guidelines, the officer enjoys qualified personal immunity, but the immunity does not run to the State. Thus, following *Savage*, a finding of qualified personal immunity on the part of the individual officer does not end the inquiry. The employing agency may still be liable for failing to use reasonable care in fashioning guidelines and procedures for the supervision of parolees. In contrast, if absolute quasi-judicial immunity applies to the officer's actions, that immunity does extend to the employing agency.

The Court of Appeals reasoned that probation officers exert control over probationers similar to that exercised by parole officers over parolees, and accordingly the duty identified in *Taggart* also applies to county probation officers. We agree. The duty identified in *Taggart* may be found where a probation officer must monitor probationers for compliance with conditions of parole.

The County argues, however, that no duty arises in this case because quasi-judicial immunity applies to the county probation officer's actions. The County cites *Plotkin v. State*, 64 Wn. App. 373, 826 P.2d 221 (1992) where the court held that parole officers' actions in failing to report violations of conditions to the Board of Prison Terms and Parole were protected by absolute quasi-judicial immunity.

However, the plaintiff in *Plotkin* "did not allege negligent supervision . . . and indeed, it appears she could not have done so. [The parolee] was not on active supervision . . . ." *Plotkin*, 64 Wn. App. at 376. *Plotkin* is thus inapposite. Further, to the extent *Plotkin* indicates that failure to detect and report violations of parole conditions is always protected by quasi-judicial immunity, it is, as the Court of Appeals held, inconsistent with this court's decision in *Sav-*

*age.* In *Savage,* we affirmed a jury determination that parole officers breached their duty when, among other things, they failed to detect and report a parolee's use of drugs. *Bishop,* 88 Wn. App. at 83. (As the Court of Appeals noted, the full facts of *Savage* are found in the Court of Appeals decision, *Savage v. State,* 72 Wn. App. 483, 487, 864 P.2d 1009, *review granted,* 124 Wn.2d 1017 (1994). *Bishop,* 88 Wn. App. at 83 n.10.) In addition, *Taggart* cited several cases where no quasi-judicial immunity was found when probation officers failed to monitor compliance with conditions of probation or allowed the probationer to violate such conditions. *A.L. v. Commonwealth,* 402 Mass. 234, 521 N.E.2d 1017 (1988) (cited in *Taggart,* 118 Wn.2d at 211-12); *Acevedo v. Pima County Adult Probation Dep't,* 142 Ariz. 319, 690 P.2d 38, 44 A.L.R.4TH 631 (1984) (cited in *Taggart,* 118 Wn.2d at 212-13); *Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986), *superseded by statute as stated in Harris v. State,* 123 Idaho 295, 847 P.2d 1156 (1992) (cited in *Taggart,* 118 Wn.2d at 220). Our approval of *Sterling* is of particular note here, because the court in *Sterling* held that a duty exists to protect others from harm posed by dangerous probationers, including investigation and reporting of probation violations for the purpose of seeking revocation.

The duty of a county probation officer is not premised merely on the reporting of violations to the court, but rather on the *failure* to adequately monitor and report violations, thus failure to adequately supervise the probationer. Accordingly, quasi-judicial immunity does not preclude liability for negligent supervision.

The County also argues no duty should be found pursuant to the analysis in *McKenna v. Edwards,* 65 Wn. App. 905, 916, 830 P.2d 385 (1992). There, a defendant was on pretrial release subject to several conditions, including weekly contact with the corrections department and reporting to a treatment center for biweekly drug and alcohol monitoring. While on pretrial release, Edwards attended a party, following which he shot one person and raped another.

In a negligence action filed by the rape victim and survivors of the shooting victim, the court addressed the issue whether Spokane County Corrections was shielded by judicial immunity for its investigation and recommendation to release Edwards, which the court answered in the affirmative. The court also addressed whether Corrections had a relationship with Edwards such that either had a duty under sections 315 and 319 of the RESTATEMENT (SECOND) OF TORTS to anticipate and control Edwards' conduct, and whether any duty was breached.

The court distinguished *Taggart* and other cases on the basis that Edwards had not been convicted and was entitled to the presumption of innocence. *McKenna*, 65 Wn. App at 916. This is not a relevant factor. The question of whether· Corrections had a duty to control turned on the nature of the relationship between Edwards and the department—a relationship defined by conditions of release and the obligations of the corrections officers. The relevant questions for purposes of sections 315 and 319 of the RESTATEMENT (SECOND) OF TORTS are whether the actor has taken charge of the third party and whether the actor knows or should know of the danger posed by the third party. These questions do not depend upon the guilt or innocence of the third party.

The court in *McKenna* also reasoned that there was no statutory mandate to supervise Edwards or any special knowledge of dangerous propensities that would warrant imposition of a duty on Corrections or the treatment facility. *Id.* As to Corrections, the court said that its duty was limited to insuring that Edwards report weekly to the department, and its reporting any violations of pretrial release to the prosecutor. *Id.* at 916-17. The court said that there was no order to supervise, no statute mandating supervision, and no agreement to supervise. *Id.* at 918. The court also concluded that Corrections lacked the knowledge necessary to warrant imposing a duty to control Edwards because nothing in his history portended murder and rape. *Id.* at 917.

In contrast, the court here directed that Miche be placed on probation with the King County District Court Probation Department and abide by all terms, conditions, rules and regulations of the probation department. The probation officer in this case therefore had the authority and the duty to supervise Miche and report to the court if he failed to comply with "all terms, conditions, rules and regulations of the Probation Department" during his two-year probation period. CP at 558. Miche's probation officer required, and Miche agreed, that upon his release from jail, Miche would attend Alcoholics Anonymous meetings twice a week, not consume alcohol, and submit to urinalysis tests. Miche was clearly under the supervision of the probation department.[1]

The County reasons, however, that *Taggart* is distinguishable because probation officers, unlike parole officers, do not have the power to arrest. *Taggart* does not state that the authority to arrest is a necessary requirement to the duty it announced. While the power to arrest enables a parole officer to take full custodial control, custodial control is not required. The relevant inquiry is the relationship of the officer with the parolee.

The County urges, though, as does Amicus Curiae State of Washington, that *Taggart* should be overruled because it wrongly concluded that a custodial relation is not required before a duty under sections 315 and 319 of the RESTATEMENT (SECOND) OF TORTS may arise. This court thoroughly analyzed this argument in *Taggart*, and the County and amicus offer no new insight. While, as amicus State notes, some jurisdictions do require a custodial relationship before

---

[1]The County also relies on *Metlow v. Spokane Alcoholic Rehabilitation Ctr., Inc.*, 55 Wn. App. 845, 781 P.2d 498 (1989). In *Metlow*, the court held that a private alcohol rehabilitation center which contracted to provide nonresidential treatment to DWI defendants in the state's deferred prosecution program had no duty to protect third persons from a participant's driving while intoxicated. The court in *Metlow* held that no special relation existed because the rehabilitation center did not have custodial control over the participant. *Id.* at 850 (distinguishing *Petersen v. State*, 100 Wn.2d 421, 671 P.2d 230 (1983)). *Metlow* is inconsistent with our decision in *Taggart*, which it predated. *Taggart* holds that a custodial relationship is not required. In light of *Taggart*, *Metlow* is not persuasive.

a duty arises to control parolees or probationers, others do not. The split was recognized in *Taggart*, where we rejected the same argument made by the County here. Moreover, we specifically noted in *Taggart* that if the Legislature chose to do so, it could enact legislation providing additional immunity. *Taggart*, 118 Wn.2d at 224. The Legislature has not done so.

Further, under the doctrine of stare decisis, this court should reverse itself on an established rule of law only upon a showing that the rule is incorrect or harmful. *State v. Ray*, 130 Wn.2d 673, 678, 926 P.2d 904 (1996); *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). Stare decisis " 'promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.' " *Keene v. Edie*, 131 Wn.2d 822, 831, 935 P.2d 588 (1997) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991)). Overruling a prior decision is a serious step, not to be undertaken lightly. *Keene*, 131 Wn.2d at 831.

The County has not shown that *Taggart* was wrongly decided. The decision in *Taggart* is founded on common-law principles embodied in the RESTATEMENT (SECOND) OF TORTS §§ 315, 319 (1965), and addressed in *Petersen v. State*, 100 Wn.2d 421, 671 P.2d 230 (1983). With the abrogation of sovereign immunity, governmental entities may be subject to tort claims under common-law principles. Nor has the County established that the decision in *Taggart* is harmful. Rather, as a matter of uniform application of tort law and the abrogation of sovereign immunity, governmental entities should be held to the same standard as private entities. Further, "maintaining the potential of state liability, as established in RCW 4.92 [abrogation of sovereign immunity], can be expected to have the salutary effect of providing the State an incentive to ensure that reasonable care is used in fashioning guidelines and procedures for the supervision of parolees." *Savage*, 127 Wn.2d at 446. Under

*Taggart*, governmental entities are not placed in a position where they must act as insurers of harm caused by dangerous individuals. As is the case in any negligence action, liability arises only where conduct does not conform to the standard of reasonable care.

Next, the County maintains that the court in *Taggart* misapplied the public duty doctrine. The County reasons that once *Taggart* is disregarded, the public duty doctrine shields the County from liability. We are not inclined to disregard *Taggart*. In *Taggart* we addressed the public duty doctrine: "The public duty doctrine provides that 'no liability may be imposed for a public official's negligent conduct unless it is shown that "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (i.e., a duty to all is a duty to no one)." ' " *Taggart*, 118 Wn.2d at 217 (citations omitted). Imposition of liability on the State in *Petersen*, 100 Wn.2d 421, for failure to satisfy a duty arising under section 315 of the RESTATEMENT (SECOND) OF TORTS presupposed that the doctrine was inapplicable, "in other words," *Petersen* "effectively created another exception to the doctrine, and it has been so regarded in later cases." *Taggart*, 118 Wn.2d at 219 n.4 (citations to later cases omitted). Exceptions to the doctrine generally embody traditional negligence principles and may be used as focusing tools to determine whether a duty is owed. *Taggart*, 118 Wn.2d at 217-18. "The question whether an exception to the public duty doctrine applies is thus another way of asking whether the State had a duty to the plaintiff." *Id.* at 218. We adhere to our analysis in *Taggart*.

The County also emphasizes Judge Agid's concurrence in *Hertog v. City of Seattle*, 88 Wn. App. 41, 63, 943 P.2d 1153 (1997), *review granted*, 134 Wn.2d 1024 (1998), where she reasoned *Taggart* "ignore[s] the reality of what officials exercising the cursory supervision permitted by state and local law can do to 'control' the behavior of dangerous or, as here, potentially dangerous criminals." Although this argument is echoed by the State, it was considered and

rejected in *Taggart*. As we said there, if the Legislature wishes to limit liability, it can do so.[2]

We conclude that the county probation officer owed a duty to exercise reasonable care to control Miche to prevent reasonably foreseeable harm to others resulting from his dangerous propensities.

Finally, the County argues that even if a duty were owed, it was not breached as a matter of law, and, further, as a matter of law any breach could not be the proximate cause of the accident in which Alexander Bishop was killed. Initially, the County claims that the only condition imposed by the court was that Miche commit no violations of the law for 24 months. However, the sentencing court also directed Miche to comply with all terms, conditions, rules and regulations of the probation department. Conditions pertaining to alcohol use, treatment and monitoring were required by Mendenhall and agreed to by Miche. Thus, Miche's probation involved more conditions than not violating the law. Pursuant to the internal manual of the department, Mendenhall had an obligation to report violations of conditions not specifically set by the court.

So far as whether fact questions remain as to breach and proximate causation, there may be fact questions as to whether Mendenhall's supervision of Miche was negligent prior to the November 6, 1992 review hearing. However, in light of the information before the district court judge at that hearing and his decision not to revoke probation, as a matter of law proximate causation is lacking. The judge knew that Miche had violated the court-imposed condition of his probation by driving while his license was suspended. He knew that Miche had an alcohol problem but attended meetings somewhat sporadically. He knew that Miche was scheduled to attend intensive alcohol

[2]During oral argument, counsel for amicus curiae State of Washington was asked whether *Taggart* and *Savage* had led to a dramatic upswing in civil cases. Counsel was understandingly unable to provide statistics, but nevertheless indicated that there had not been a large number of cases filed, saying that it was "unanswerable" why there were not more.

treatment within three days, and thus knew that Miche was not then in such treatment and that Miche needed such treatment. Nevertheless, despite Miche's violation of his probation conditions, the obvious severity of his alcohol problem, and the fact that Miche knowingly drove after his license had been suspended, the judge did not revoke probation. The accident occurred only two days later, one day before Miche's scheduled treatment was to begin.

As a matter of law, the judge's decision not to revoke probation under these circumstances broke any causal connection between any negligence and the accident. *See Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 482, 951 P.2d 749 (1998) (a defendant's negligence is the proximate cause of the injury only if such negligence, unbroken by any new independent cause, produces the injury complained of). The judge's actions, of course, are shielded by judicial immunity.[3] Accordingly, summary judgment in favor of the County was proper because as a matter of law proximate causation is lacking.

We agree with the Court of Appeals' holding that the County owed a duty to control Miche, but hold that as a matter of law proximate cause is lacking. Therefore, summary judgment in favor of the County was proper. The Court of Appeals is reversed.

GUY, C.J., DURHAM, SMITH, JOHNSON, ALEXANDER, TALMADGE, and SANDERS, JJ., and DOLLIVER, J. Pro Tem., concur.

---

[3]In a similar vein, we agree with the Court of Appeals which held that any claimed negligence resulting from the probation officer's failure to do anything about Miche's fraudulent representations to the sentencing court is protected by quasi-judicial immunity because sentencing decisions are absolutely immune.