15 P.3d 180 (2000)
ESTATE OF Ashley R. JONES, by and through its Personal Representatives John Stephen Jones and Debra Kay Jones; John Stephen Jones and Debra Kay Jones, husband and wife, and the marital community composed thereof; Marlana Orlene Brown, a single person; Stephen Paul Jones, a minor, by and through his guardians, John Stephen Jones and Debra Kay Jones; Ron Alumbaugh and Molly Alumbaugh, husband and wife, and the marital community composed thereof; Tyler Alumbaugh, a minor, by and through his guardians, Ron Alumbaugh and Molly Alumbaugh; Christopher Alumbaugh, a minor, by and through his guardians, Ron Alumbaugh and Molly Alumbaugh; and Ron Alumbaugh, II, a minor, by and through his guardians, Ron Alumbaugh and Molly Alumbaugh, Appellants,
v.
STATE of Washington; Department of Social and Health Services, an agency of the State of Washington; Juvenile Rehabilitation Administration, an agency of the State of Washington; Second Chance, a Washington non-profit corporation, d/b/a Larch Way Lodge; Island County, a political subdivision of the State of Washington; Respondents, and United Furniture Warehouse, Inc., a Washington corporation, Defendant.
No. 45303-3-I.
Court of Appeals of Washington, Division 1.
December 26, 2000.
*183 Wayne Clark Fricke, Law Offices of Monte E. Hester, Tacoma, for Appellants.
Robert William Novasky, Monahan & Biagi, PLLS, Tacoma, for Second Chance.
John Joseph Kirschner, Assistant Attorney General, Seattle, for State of WA, DSHS.
Michael Alexander Patterson, Lee, Smart, Cook, Martin & Patterson, Seattle, for Island County.
*182 GROSSE, J.
Recent decisions of the State Supreme Court compel the result in this case. Quasi-judicial immunity does not apply where a claim of negligent supervision arises from the failure to properly monitor and report a probationer's possible parole violations. Questions of fact exist as to whether Island County provided material information to the sentencing court and to the State, whether the State properly assigned the offender to community placement, and whether the State and community placement program operator properly supervised the offender. Accordingly, summary judgment was improper. We reverse.

FACTS
David Daniel Dodge was convicted of residential burglary as a juvenile on May 15, 1997. In addition to that crime, his prior criminal history consisted of two convictions for burglary in the second degree and three convictions for residential burglary.
When Dodge committed the crime he was already on probation for his earlier convictions. He was supervised and monitored by Island County juvenile probation counselor John Deremiah who maintained case notes on Dodge. Those notes included references to possible substance abuse and assaultive behavior by Dodge. On one of Dodge's prior burglaries, the court's conditions of release included a finding that he was a threat to the community. Although Deremiah supervised Dodge, he did not provide this information to law enforcement officers or to the court.
Deremiah prepared a predisposition report for sentencing after the May 15 conviction for burglary. Listed as a mitigating factor in Dodge's predisposition report was the fact that his conduct did not cause or threaten serious bodily injury. The report also indicated that Dodge had several fights with his parents; had a lack of respect for the law; showed a lack of respect toward other peoples' property; and continued to commit burglary offenses while on supervision. The court found no mitigating or aggravating factors and committed Dodge to the State of Washington Department of Social and Health Services, Juvenile Rehabilitation Administration (JRA), for a period of 30-40 weeks.
JRA officer Kristine Morse prepared an evaluation of Dodge to determine the proper placement for him to serve the sentence. The placement evaluation included information on Dodge's official criminal history and a report by Deremiah that Dodge's previous response to supervision included no major community supervision problems and that Dodge had done well with structured programs. Deremiah did not forward to the JRA the information in his notes about Dodge's alleged problem behavior.
As part of the placement evaluation, Morse completed an Initial Security Classification Assessment. This assessment attempts to measure the offender's risk level, which is then indexed against the seriousness of the offense for which the offender was convicted. This produces an initial security classification of either minimum, medium, or maximum.
Dodge's offense seriousness was medium with a score of 2. Dodge had a low risk level score of 18 which resulted in his minimum security classification. Had Dodge's risk level been 21 or higher, he would have received a medium security classification and been ineligible for community placement. Identification of a substance abuse or dependency problem would have increased Dodge's risk level to 21. Similarly, a finding of prior assaultive behavior would have increased Dodge's risk level to 21. The JRA placed Dodge on minimum security pending community placement.
*184 Dodge was initially placed at the State's Indian Ridge incarceration facility. On June 30, 1997, Dodge was placed in Diamond Home, a group home operated by Second Chance, a nonprofit corporation that contracted with the JRA to provide housing, supervision, and treatment of juvenile offenders who were assigned to community placement. After two weeks at Diamond Home, Dodge consumed a prescription Tylenol with codeine pill that he obtained from another resident. This was done in violation of Second Chance policies. Dodge was therefore temporarily returned to Indian Ridge to impress upon him the need for compliance with the community placement program rules.
After 12 days, the State relocated Dodge to Larch Way Lodge, another group home facility operated by Second Chance. Through Larch Way Lodge, Dodge began working at a United Furniture Warehouse store. In the course of a random room search, counselors at Larch Way Lodge discovered an empty cigarette carton and a cellophane wrapper with suspected marijuana flakes in Dodge's room. Counselors were also aware that Dodge had discussed the ease of a possible escape. Pending a urinalysis, Dodge was placed on restricted status, which suspended his privileges, but allowed him to go to work.
Dodge was concerned about being returned to Indian Ridge. On September 19, 1997, through deception, Dodge left work without permission and without escort, and escaped from community placement. He took a bus to Smokey Point where he spent the next two days with friends. On the evening of September 20, Dodge became intoxicated and passed out on a sofa outside his friend's apartment. When he awakened, he wandered for several hours checking houses for easy entry with the intent to steal.
In the early morning hours of September 21, Dodge entered the Alumbaugh neighborhood in Stanwood. Finding an open sliding glass door, he entered the Alumbaugh home where 12 year old Ashley Jones was baby-sitting. He clubbed her with a stick, knocking her unconscious, dragged her body within the house, and raped her. She died from these wounds, which resulted in Dodge's conviction for murder.
The family and estate of Ashley Jones and the Alumbaugh family (hereinafter referred to as the Estate) brought suit against the State of Washington, Island County, Second Chance, a Washington nonprofit corporation, d/b/a Larch Way Lodge, and United Furniture Warehouse, Inc.[1] for negligent supervision of Dodge resulting in wrongful death and emotional distress. On summary judgment the trial court dismissed the claims against the defendants. This appeal followed.

DISCUSSION
The usual standard of review applies.[2] The burden is on the plaintiff to establish specific and material facts that would support a prima facie case on each element of the claim.[3]
In an action for negligence, the plaintiff must prove four basic elements: (1) the existence of a duty on the part of the defendants toward the plaintiff; (2) a breach of that duty by the defendants; (3) a resulting injury to the plaintiff, (4) that was proximately caused by the breach.[4] The existence of a duty is a question of law.[5] While breach *185 and proximate cause are generally questions for the trier of fact, they may be determined as a matter of law where reasonable minds could not differ about them.[6]
Generally there is no duty to prevent a third party from causing harm to another, but an exception may exist where a party takes charge of a third person and should know that the third party is likely to cause harm to another if not controlled.[7] The duty exists where there is a "`"definite, established and continuing relationship between the defendant and the third party."'"[8] The duty exists only when the defendant lacks immunity.[9] A series of cases in the past decade has significantly affected this area of the law.
In Taggart v. State, the court held that a parole officer takes charge of a parolee and thereby assumes a duty to protect against reasonably foreseeable dangers.[10] This is so despite the absence of a custodial relationship and without exercising a continuing hourly or daily dominance and dominion over the parolee.[11]Taggart also held that quasi-judicial immunity only applies to acts of a quasi-judicial nature and does not include a party's other acts that are not quasi-judicial.[12]
In Savage v. State, the court held that while parole officers have qualified personal immunity, that immunity does not run to the State, which remains liable for a parole officer's negligent supervision.[13]
In Bishop v. Miche, the court held that a parole officer's duty to supervise parolees applies equally to county probation officers supervising probationers and obligates them to protect others from reasonably foreseeable harm by the probationer.[14] Accordingly, probation officers have a duty to monitor and report violations.[15] Where there is a failure to adequately monitor and report violations quasi-judicial immunity does not preclude liability for negligent supervision.[16]
Finally, the court's recent decision in Tyner v. Department of Social & Health Services significantly affects the law governing claims for negligent supervision.[17] A judicial order will not act as a superseding intervening cause terminating State liability where the State fails to provide all material information to the court for its decision.[18] In the context of a claim for negligent investigation, the State's failure to provide all material information to the court may be the proximate cause of injury.[19] Whether information is material is generally a question of fact for the jury.[20]
Island County's Liability
Here, the estate makes three claims against Island County. It claims Island *186 County failed to properly supervise Dodge while he was on probation because it did not properly investigate or report evidence of possible parole violations by Dodge. The Estate also claims that Island County failed to forward all material information to the court for its sentencing determination. Finally, the Estate claims Island County was negligent when it failed to forward relevant information to the State for its placement evaluation of Dodge and negligent when probation officer Deremiah reported that Dodge had no major community supervision problems and did well in structured programs.
Whether or not a duty has been breached is generally a question of fact for the jury.[21] The information in Deremiah's notes provided evidence of possible parole violations by Dodge.[22] Therefore, it is for a jury to decide whether Island County was negligent in its supervision of Dodge because it failed to properly monitor and report this evidence of possible misconduct.
Quasi-judicial immunity does not protect Island County from liability for deficiencies in the sentencing information it provided to the court. Quasi-judicial immunity does not apply where the defendant county fails to adequately monitor and report probation violations or fails to provide all material information to the court.[23] Because Deremiah's notes were not provided to the court and because it is a question for the jury whether those notes were material, summary judgment on this issue was improper.
Similarly, it is for the jury to determine whether Island County was negligent because it provided incomplete information to the JRA for Dodge's placement evaluation: Deremiah's report indicated that Dodge had no major community supervision problems and did well in structured programs. For all of these reasons, dismissal of the claim against Island County was improper.
Liability of State of Washington and Second Chance
The Estate claims the State incorrectly evaluated Dodge for placement so that he was improperly granted community placement. The Estate also claims that both the State and Second Chance were negligent in the supervision of Dodge while he was in community placement. Second Chance was an agent of the State when it operated the group home to which the State assigned Dodge and the State remains liable for any negligent supervision by Second Chance via respondeat superior.
Questions of fact exist as to whether the State was negligent when it placed Dodge at Larch Way Lodge. The Estate claims the JRA failed to follow required procedures when it investigated Dodge's background for his initial security classification and that as a result Dodge was scored too low. In support of this claim the Estate produced portions of the instruction manual for scoring security classifications and testimony from Kristine Morse, the JRA officer who scored Dodge.
The diagnostic manual directed the person scoring the offender to request a number of documents. Morse could not verify whether she requested these documents and her testimony indicated that if she did it was only in a general way. The manual also contained the following provision:
Item A: Prior Assaultive Behavior. Score a 3 if there is evidence a youth has assaulted others in the past. An assault is an attempt to physically injurs [sic] another person. This is not a criminal history item; the assaultive behavior does not have to have resulted in an arrest or conviction.
Morse stated she interpreted assaultive behavior to refer to an ongoing pattern occurring over at least a couple of months. If believed, this evidence could permit a jury to find that when Morse scored Dodge she did *187 not comply with proper procedure and that the State was negligent.
There was also evidence which, if believed, would permit a jury to conclude Dodge was not properly supervised at Larch Way Lodge. Apparent drug contraband was found in Dodge's room after which Dodge indicated to one counselor that he was mad about having to take a urinalysis and probably wouldn't pass it. A Second Chance counselor later stated she believed there was a problem with drug use by residents at the time Dodge was at Larch Way Lodge and Dodge later testified he had smoked marijuana while there.
In the log at Larch Way Lodge, there was a note from a counselor the evening before Dodge escaped that a close check should be kept on Dodge because he felt Dodge might try to escape. Dodge testified that counselor Kenneth Troy was aware of his plan to escape and allowed him to get a head start by not properly checking on him at appropriate times. If this evidence were believed, a jury could find that the supervision of Dodge at Larch Way Lodge was negligent.
The State is also not covered by discretionary immunity. The trial court dismissed the claims against the State of Washington and the Juvenile Rehabilitation Administration on the basis that they had discretionary immunity. Under discretionary immunity, courts refuse to pass judgment on policy decisions of coordinate branches of government.[24] Discretionary governmental acts are immune from liability, but operational or ministerial acts are not. Further, discretionary immunity is narrow and applies only to basic policy decisions made by a high level executive.[25]
Because discretionary immunity only pertains to the exercise of discretionary acts at a basic policy level,[26] it does not cover the State's supervision of Dodge as alleged by the Estate. Indeed, discretionary immunity does not cover negligent supervision as a matter of binding precedent.[27]
The State relies primarily on Evangelical United Brethren Church of Adna v. State and on Eldredge v. Kamp Kachess Youth Services, Inc. wherein the court relied upon Evangelical United Brethren Church.[28] But in Taggart, the court recognized that the doctrine of discretionary immunity as expressed in Evangelical United Brethren Church had been significantly narrowed by later decisions.[29] Thus, the State relies on law that has been expressly identified as outdated.
All three defendant parties claim they are not liable because Dodge's actions were not foreseeable. "Ordinarily, foreseeability is a question of fact for the jury unless the circumstances of the injury `are so highly extraordinary or improbable as to be wholly beyond the range of expectability.'"[30]
The escape and subsequent rape and murder of Ashley Jones by a person convicted of burglary are not wholly beyond the range of expectability. In Hertog v. City of Seattle, the court held it could be foreseeable that a supervised individual would commit rape where that individual had been convicted of exposure and was later charged but not yet *188 convicted for a sexually motivated burglary.[31] This court cannot say that Dodge's actions were so highly extraordinary or improbable as to be wholly beyond the range of expectability where Dodge had four burglary convictions and Dodge committed the rape and murder in the course of another burglary. The question of foreseeability is therefore a matter for the jury.
Summary judgment was improper. We reverse.
ELLINGTON, J., and AGID, C.J., and concur.
NOTES
[1] United Furniture Warehouse, Inc. was dismissed from the lawsuit.
[2] When this court reviews a grant or denial of summary judgment it makes the same inquiry as the trial court. Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. The facts and reasonable inferences from the facts are considered in the light most favorable to the nonmoving party. Questions of law are reviewed de novo. Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999) (citing Taggart v. State, 118 Wash.2d 195, 199, 822 P.2d 243 (1992), CR 56(c), Sherman v. State, 128 Wash.2d 164, 183, 905 P.2d 355 (1995)).
[3] Sangster v. Albertson's, Inc., 99 Wash.App. 156, 160, 991 P.2d 674 (2000).
[4] Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 48, 914 P.2d 728 (1996) (citing Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 127-28, 875 P.2d 621 (1994)).
[5] Hertog, 138 Wash.2d at 275, 979 P.2d 400 (citing Schooley v. Pinch's Deli Mkt., Inc., 134 Wash.2d 468, 474, 951 P.2d 749 (1998)).
[6] Hertog, 138 Wash.2d at 275, 979 P.2d 400 (citing Sherman, 128 Wash.2d at 183, 905 P.2d 355).
[7] Bishop v. Miche, 137 Wash.2d 518, 524, 973 P.2d 465 (1999) (citing Restatement (Second) of Torts § 319 (1965)).
[8] Bishop, 137 Wash.2d at 524, 973 P.2d 465 (quoting Taggart, 118 Wash.2d at 219, 822 P.2d 243 (quoting Honcoop v. State, 111 Wash.2d 182, 193, 759 P.2d 1188 (1988))).
[9] Bishop, 137 Wash.2d at 524-26, 973 P.2d 465 (discussing absolute and qualified immunity for parole officers).
[10] Taggart v. State, 118 Wash.2d 195, 223-24, 822 P.2d 243 (1992)
[11] Taggart, 118 Wash.2d at 223-24, 822 P.2d 243.
[12] Taggart, 118 Wash.2d at 210-11, 822 P.2d 243.
[13] Savage v. State, 127 Wash.2d 434, 445-47, 899 P.2d 1270 (1995)
[14] Bishop, 137 Wash.2d at 525-26, 973 P.2d 465.
[15] Bishop, 137 Wash.2d at 526, 973 P.2d 465.
[16] Bishop, 137 Wash.2d at 526, 973 P.2d 465. The Bishop court also held that where a court had all material information before it when it issued an order, that order would act as an intervening superseding cause terminating State liability. Bishop, 137 Wash.2d at 532, 973 P.2d 465.
[17] Tyner v. State, Dep't of Soc. & Health Servs., 141 Wash.2d 68, 1 P.3d 1148 (2000).
[18] Tyner, 141 Wash.2d at 88, 1 P.3d 1148.
[19] Tyner, 141 Wash.2d at 86, 1 P.3d 1148.
[20] Tyner, 141 Wash.2d at 86, 1 P.3d 1148.
[21] Hertog, 138 Wash.2d at 275, 979 P.2d 400.
[22] Among other things, the notes included statements by Dodge's mother that Dodge may have abused drugs and alcohol; her complaint that Dodge stole the family vehicle; and Dodge's own statement to Deremiah that he had been involved in a fight.
[23] Tyner, 141 Wash.2d at 86, 1 P.3d 1148.
[24] Taggart, 118 Wash.2d at 214-15, 822 P.2d 243.
[25] Taggart, 118 Wash.2d at 214-15, 822 P.2d 243.
[26] Chambers-Castanes v. King County, 100 Wash.2d 275, 669 P.2d 451 (1983).
[27] Taggart, 118 Wash.2d at 215, 822 P.2d 243.
[28] Evangelical United Brethren Church of Adna v. State, 67 Wash.2d 246, 407 P.2d 440 (1965); Eldredge v. Kamp Kachess Youth Servs., Inc., 90 Wash.2d 402, 583 P.2d 626 (1978). Eldredge relies on Evangelical United Brethren Church.
[29] Taggart, 118 Wash.2d at 214-15, 822 P.2d 243 (citing Chambers-Castanes, 100 Wash.2d at 282, 669 P.2d 451 (holding the doctrine applies to basic policy decisions by high-level executives); King v. City of Seattle, 84 Wash.2d 239, 525 P.2d 228 (1974) (explaining that immunity exists only if the decision was the conscious outcome of balancing risks and advantages)).
[30] Seeberger v. Burlington N. R.R. Co., 138 Wash.2d 815, 823, 982 P.2d 1149 (1999) (quoting McLeod v. Grant County Sch. Dist. No. 128, 42 Wash.2d 316, 323, 255 P.2d 360 (1953)). See also, Schooley v. Pinch's Deli Mkt., Inc., 134 Wash.2d 468, 478, 951 P.2d 749 (1998).
[31] Hertog v. City of Seattle, 88 Wash.App. 41, 55, 943 P.2d 1153 (1997), aff'd, 138 Wash.2d 265, 979 P.2d 400 (1999).