[No. 60054-1-I.   Division One.   April 21, 2008.]

JOHN T. LALLAS ET AL., *Appellants*, v. SKAGIT COUNTY ET AL., *Respondents*.

*Harry B. Platis* and *Denis C. Wade* (of *Platis Law Firm*), for appellants.

*Thomas E. Seguine, Prosecuting Attorney*, and *Paul H. Reilly, Deputy*, for respondents.

¶1 BECKER, J. — The victim of an assault alleges that a deputy sheriff was negligent when carrying out a judge's order to escort the assailant to jail. Because the lawsuit challenges the manner in which the order was carried out rather than the substance of the order itself, quasi-judicial immunity does not shield the deputy or her employer.

¶2 Anthony Reijm appeared before Skagit County District Court Judge Stephen Skelton on September 4, 2002. Reijm apparently had failed to abide by conditions of release previously imposed. Judge Skelton decided that he should be immediately taken into custody.

¶3 At the time, Skagit County Sheriff's Deputy Deanna Randall was working as a "court rover," a six-month assignment to provide security in the superior and district courts subject to the direction of the judges. Judge Skelton notified Deputy Randall that he needed her to report to his courtroom to take Reijm to the jail. Deputy Randall came to the courtroom, placed her hand on Reijm's elbow, and began to escort him on the short walk from the courtroom to the jail.

¶4 It seems Reijm had not anticipated that he would be booked into jail right after his court appearance. He asked Deputy Randall if he could first go outside and talk with his girl friend. Deputy Randall denied this request. Reijm broke free and ran toward the front door of the courthouse. Deputy Randall yelled at him to stop. John Lallas, a security guard at the Skagit County Courthouse, was at his

station near the door when he heard the commotion. Lallas squared himself between Reijm and the exit. Reijm ran straight into Lallas, knocked him to the floor, and ran out the door. Police found Reijm hiding in a stairwell a few blocks from the courthouse. Meanwhile, an ambulance took Lallas to the hospital.

¶5 Lallas filed this lawsuit against Deputy Randall and Skagit County in May 2005, seeking damages for the injuries he sustained when Reijm escaped. His theory of liability was that Deputy Randall, who was at least a foot shorter than Reijm, was negligent when she failed to put Reijm in handcuffs for the trip to the jail. The defendants countered that they could not be sued because Deputy Randall was acting as "an arm of the court" when carrying out Judge Skelton's order.[1] The trial court granted the defendants' motion for summary judgment on the basis of quasi-judicial immunity.

¶6 Lallas appeals. Our review is de novo. *Babcock v. State*, 116 Wn.2d 596, 598, 809 P.2d 143 (1991).

¶7 The doctrine of judicial immunity was developed to protect judges from harassing lawsuits filed by litigants displeased with a judge's decision. Judicial immunity is absolute; it shields the recipient from liability for willful misconduct as well as negligence. *Babcock*, 116 Wn.2d at 606. Absolute immunity is strong medicine that is justified only when the danger of officials being deflected from effective performance of their duties is very great. *Forrester v. White*, 484 U.S. 219, 230, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).

¶8 Quasi-judicial immunity attaches to persons or entities that perform functions so comparable to those performed by judges that they ought to share the judge's absolute immunity while carrying out those functions. *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 99, 829 P.2d 746 (1992). For example, a bailiff who gave a dictionary to a deliberating jury was protected by judicial

---

[1] Clerk's Papers at 121.

immunity because the bailiff was viewed as speaking to the jury on behalf of the judge:

> One of the judge's duties is to determine what information can be given to the jury. The bailiff, as the judge's alter ego, did this, even though she may have been acting incorrectly or in excess of her authority.
>
> The duty imposed upon the bailiff, as a judicial officer, is a judicial duty; her failure to perform it properly is a judicial and not an individual injury.

*Adkins v. Clark County*, 105 Wn.2d 675, 678-79, 717 P.2d 275 (1986).

¶9 *Adkins* does not imply that a bailiff, or other court employees with duties comparable to a bailiff, will be shielded by judicial immunity for every act carried out in a courtroom. The title held by the official claiming absolute immunity is not dispositive. It is "the nature of the function performed, not the identity of the actor who performed it," that informs a determination of whether an actor is entitled to absolute immunity. *Forrester*, 484 U.S. at 229.

¶10 The county reasons that Deputy Randall's acts are protected by quasi-judicial immunity because the assignment she fulfilled was to carry out a judge's order and therefore, like the bailiff in *Adkins*, she was performing a judicial function. In support of this argument, the county cites *Babcock*, in which our Supreme Court rejected an argument that a state caseworker was absolutely immune for negligently placing foster children in the care of a sexual predator who molested them. *Babcock*, 116 Wn.2d at 598. The court stated, "Had the court ordered the actions complained of, quasi-judicial immunity would attach." *Babcock*, 116 Wn.2d at 609. But one would have to read this statement out of context to understand it as a blanket grant of absolute quasi-judicial immunity to anyone who carries out a court order. In context, the Supreme Court was clarifying that the trial court judge had *not* ordered the specific placement complained of.

¶11 A federal case that does support the county's position is *Martin v. Hendren*, 127 F.3d 720 (8th Cir. 1997). In

*Hendren*, an Arkansas judge ordered an officer to " 'put the cuffs on' " and remove an unruly woman from the courtroom. *Hendren*, 127 F.3d at 721. When the woman resisted, the officer flipped her face down on the floor, handcuffed her, and pulled her up by the handcuffs and her hair. The Eighth Circuit ultimately ruled that quasi-judicial immunity shielded the officer from the woman's claim of excessive use of force. The court concluded that the officer was acting as a de facto bailiff when obeying the specific judicial command to restore order in the courtroom. *Hendren*, 127 F.3d at 721. As pointed out by the dissenting judge in *Hendren*, this ruling means that if a judge orders a bailiff to remove a litigant from the courtroom, the bailiff will enjoy absolute immunity even if the bailiff decides that the most expeditious way to accomplish this order is to bash the litigant in the head with a baseball bat. *Hendren*, 127 F.3d at 723 (Lay, J., dissenting).

¶12 The Seventh Circuit has disagreed with the *Hendren* majority in a case with similar facts, *Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001). Jack Richman and his mother waited several hours in court to contest a traffic ticket. They protested when the judge continued the case to a later date. The judge ordered Richman restrained when he refused to be quiet. Fourteen deputies attacked Richman, wrestled him to the ground, and put him in handcuffs. Richman stopped breathing and was pronounced dead upon arrival when taken to the hospital. *Richman*, 270 F.3d at 433-34.

¶13 Richman's mother sued the deputies for wrongful death caused by use of excessive force. The deputies claimed quasi-judicial immunity on the basis that they were executing the judge's order to provide courtroom security. The district court ruled that the deputies were not absolutely immune from the claim. The Seventh Circuit affirmed. Quasi-judicial immunity does not attach when the lawsuit challenges the manner in which a judge's order was enforced rather than the specifics of the order:

The policies articulated in our quasi-judicial immunity cases have less force when, as in this case, the challenged conduct is the manner in which the judge's order is carried out, and not conduct specifically directed by a judge. Reading Richman's complaint in the light most favorable to her, the claim is not that the judge ordered the deputies to use unreasonable force, but that the deputies exceeded the judge's order by the manner in which they executed it. The claim for damages in this case is not therefore a collateral attack on the judge's order (an order that Richman concedes was valid), and an appeal of the judge's order would provide no remedy. Similarly, the deputies are not being called upon to answer for wrongdoing directed by the judge, but instead for their own conduct. And that conduct—the manner in which they enforced the judge's order—implicates an executive, not judicial, function.

*Richman*, 270 F.3d at 437-38.

¶14 *Richman* in our view is more persuasive than *Hendren*. The distinction it makes between the substance of a judge's order and the manner in which it is carried out is similar to the distinction in *Adkins* between a judicial function and other kinds of functions. Judge Skelton performed a judicial function when he ordered that Reijm be immediately taken into custody. Deputy Randall performed an executive function when she carried out that order and chose to take Reijm into custody without using handcuffs. She is not being called upon to answer for anything Judge Skelton did or failed to do. She is being called upon to answer for her own conduct. Allowing Deputy Randall to be sued for the manner in which she carried out Judge Skelton's directive is not a collateral attack on Judge Skelton's decision to send Reijm to jail. It will not threaten the independence of judges who must make future decisions to have litigants taken into custody.

¶15 The county argues that absolute immunity must be extended to courtroom security officers as a matter of public policy, in order to assure that the fear of being sued will not cause them to hesitate in carrying out a judge's orders. *Richman* persuasively addresses this concern, noting that "without in any way minimizing the vital and often

valorous service of those who provide security to judges and other participants in the judicial process," the need for immediate action in the face of potentially fatal consequences is not a situation unique to courtrooms—and yet qualified immunity, not absolute immunity, "is the rule for law enforcement officers of all kinds." *Richman*, 270 F.3d at 438; *see also Savage v. State*, 127 Wn.2d 434, 899 P.2d 1270 (1995). That the need for security arises in a courtroom rather than on the street does not justify granting immunity that is absolute rather than qualified.

¶16 Because Deputy Randall was not performing a judicial function when she engaged in the conduct that is challenged in this lawsuit, justification is lacking for the application of quasi-judicial immunity to her conduct. The order of dismissal is reversed.

GROSSE and AGID, JJ., concur.

Review granted at 165 Wn.2d 1003 (2008).